2007 OK CIV APP 119

James W. BOYD and Erin D. Fager, Individually, and as Guardians for Keith Alan Boyd, II, a Minor Child, Plaintiffs/Appellants,

v.

Pamela TIETZE, M.D., Defendant/Appellee,

and

Emily Fish, M.D.; Doe Physicians, Nurses or Other Defendants 4 through 10; Hillcrest Medical Center, Defendants.

No. 103951.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 10, 2007.

Certiorari Denied Nov. 19, 2007.

---

Jack N. Herrold, John A. Bugg, Herrold Herrold & Co., Lawyers, P.C., Tulsa, OK, and James S. Bostwick, Bostwick & Associates, San Francisco, CA, for Plaintiffs/Appellants.

Jeffrey A. Glendening, John D. Bogatko, The Glendening Law Firm, P.L.L.C., Tulsa, OK, for Defendant/Appellee.

## OPINION

ADAMS, Judge.

¶ 1 Plaintiffs James W. Boyd and Erin D. Fager, individually and as Guardians of their son, Keith Boyd, appeal a trial court judgment in favor of Defendant Pamela Tietze, M.D. on their claim for medical negligence. The trial court concluded summary adjudication was appropriate because Defendant was immune from a tort action because she was a state employee acting within the scope of her employment at the time the alleged negligence occurred. We agree with Plaintiffs that summary adjudication was inappropriate because genuine issues of material fact remain, and we reverse the trial court's judgment and remand the case for further proceedings.

¶ 2 Plaintiffs sued Defendant and other medical providers,[1] for damages they allege occurred as a result of the breach of standards of medical care and treatment for the management of Plaintiff Fager's labor and the delivery of Plaintiffs' child on January 27, 2004.[2] While Plaintiff Fager was in labor at Hillcrest Medical Center, Defendant performed caesarean procedures on two other patients, the first described as having arrested labor and the second as having a breech presentation with ruptured membranes. They contend that the latter procedure should not have been performed prior to the caesarean procedure to deliver Plaintiffs' child, which procedure was attended to by Defendant Dr. Emily Fish, and a resident physician identified as Dr. Smith.

¶ 3 Defendant moved for judgment in her favor, arguing she was entitled to immunity

---

1. Prior to the filing of Defendant's motion, Plaintiffs dismissed their claim against Board of Regents, The University of Oklahoma, d/b/a OU Physicians, Jennifer Cameron, M.D., Jerry Quiring, M.D. (also identified as Jerry Querring, M.D.), and R. Michael Morse, M.D. without prejudice to refiling.

2. According to Plaintiffs, their child sustained permanent brain injury with spastic quadriplegia as a result of the medical management rendered by the various defendants, necessitating continuing medical and other expenses for the child's care, as well as causing him pain, suffering, anguish and a loss of earning ability.

under The Governmental Tort Claims Act (the Act), 51 O.S.2001 § 151, et seq. The trial court granted her motion, finding she was an employee of the state and was immune from individual liability under the Act. The trial court entered express findings pursuant to 12 O.S.2001 § 994(A) allowing for appellate review of its ruling as to Defendant. Plaintiffs' appeal followed.

¶ 4 In addressing Plaintiffs' claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Defendant was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Plaintiffs. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17.

¶ 5 The evidentiary material provided to the trial court reveals no dispute about the fact that Defendant first encountered Plaintiff Fager as result of her duties as a faculty physician employed by the University of Oklahoma. Moreover, it is undisputed that Defendant's employment duties included clinical duties supervising patient care by resident and intern physicians as part of the graduate medical education provided by the University of Oklahoma. Remaining pertinent facts will be discussed in connection with the analysis of the issues which follows.

## WAIVER DUE TO INSURANCE

¶ 6 Plaintiffs contend there was a waiver of any immunity because liability insurance was procured for Defendant. They cite in support of this claim 51 O.S.2001 § 158(B), which addresses settlements and the defense of claims when "a policy or contract of liability insurance covering the state or political subdivision or its employees is applicable" and further provides that "the terms of the policy govern the rights and obligations of the state or political subdivision." On the undisputed facts in this record, Plaintiffs gain nothing by an application of this provision. The insurance policy which they claim waives immunity specifically excludes coverage for "the rendering of **professional services** for which **the insured** has complete immunity as an employee of, or contractor for, a federal, state or local government." (Bold in original.) Consequently there is no "policy or contract of liability insurance ... applicable" because no coverage applies if Defendant is an employee for purposes of the Act and therefore is entitled to immunity.[3]

## IMMUNITY

¶ 7 Defendant's claim for immunity is principally based upon 51 O.S.Supp.2003 § 152(5)(b) and (c), which provide:

b. For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:

(1) physicians acting in an administrative capacity,

(2) resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University,

(3) faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties,

(4) physicians who practice medicine or act in an administrative capacity as an employee of an agency of the State of Oklahoma, and

(5) physicians who provide medical care to inmates pursuant to a contract with the Department of Corrections.

Physician faculty members and staff of the University of Oklahoma Health Sciences

---

**3.** Because of this conclusion, we need not and *do not* address the issue of whether an insurance policy which provided coverage *despite* immunity results in a waiver of immunity by the employee.

Center and the College of Osteopathic Medicine of Oklahoma State University not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state.

c. *Except as provided in subparagraph (b) of paragraph 5 of this section,* in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients; (Emphasis added.)

¶ 8 Plaintiffs argue that Defendant is not entitled to immunity under these provisions, particularly § 152(5)(c), because it protects only the "state" and individual employees do not fall within the definition of "State" set forth in 51 O.S.2001 § 152(10). This argument ignores other relevant provisions of the Act. Under the Act, "[t]he state ... shall be liable for loss resulting from its torts or the torts *of its employees* acting within the scope of their employment and *subject to limitations and exceptions specified,*" 51 O.S.2001 § 153(A), and that the liability "shall be exclusive and in place of all other liability of the state ... *or employee* at common law or otherwise." 51 O.S.2001 § 153(B) (Emphasis added.) Therefore, the relevant inquiry is not whether an individual qualifies under the definition of "state" but rather whether the person qualifies as an employee acting within the scope of his or her employment under the Act when taking into account applicable limitations and exceptions which entitle an employee to immunity from liability "at common law or otherwise."

### The Dichotomy Between Teaching Duties and Medical Practice

¶ 9 In *Anderson v. Eichner,* 1994 OK 136, 890 P.2d 1329, the Oklahoma Supreme Court addressed the exposure to liability for medical negligence by a faculty physician like Defendant. Based on the specific provisions of the version of § 152(5)[4] in effect on the date of the alleged injury, the Court held faculty physicians were "outside the scope of their employment *whenever* they engage in the practice of medicine or in the provision of medical or surgical treatment, even though they *also* may be acting as [a] teacher." 1994 OK 136, ¶ 11, 890 P.2d at 1337. (Emphasis in original.) Therefore, the Court recognized a legislatively-created dichotomy between the teaching duties of faculty physicians and the practice of medicine.

¶ 10 In so holding, the Court focused on the effect of the last sentence in the applicable version of § 152(5) which, as pertinent here, expressly removed the state from any liability for torts committed by faculty physicians "while practicing medicine or providing medical treatment to patients." According to *Anderson,* 1994 OK 136, ¶ 12, 890 P.2d at 1337, this sentence

clearly takes the employee/teaching-physicians ... out of the scope of their employment when they are practising[practicing] medicine—*whether for educational or other purposes* yet leaves them within the protection of respondeat superior liability for those of their duties that are disconnected from treatment of patients. (Footnote omitted, emphasis added).

¶ 11 Despite amendments to the operative section of law after *Anderson,* Plaintiffs contend the law has not changed and the dichotomy between teaching duties and patient care still removed Defendant from the scope of her employment when the alleged negligence occurred here. We disagree because

4. On the date of the alleged injuries involved in *Anderson,* 12 O.S.Supp.1986 § 152(5) provided, in pertinent part:

For the purpose of this act, physicians acting in an administrative capacity, resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma College of Medicine or the Oklahoma College of Osteopathic Medicine and Surgery and faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery, while engaged in their teaching duties are employees of the state. Physician faculty members of the University of Oklahoma College of Medicine and the Oklahoma College of Osteopathic Medicine and Surgery not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state. However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients.

Plaintiffs' argument gives no effect to the legislative change since *Anderson* was adopted.

¶ 12 For our purposes the primary legislative change is the addition of the language emphasized in our quotation from § 152(5)(c) in paragraph seven above. Prior to the legislative amendment, the last sentence in § 152(5), which was applied in *Anderson,* might be best described as creating an exception to the rule otherwise created in § 152(5) that physicians like Defendant are treated as state employees when they are engaged in administrative tasks or teaching duties. This language, as applied in *Anderson,* meant that physicians like Defendant who were engaged in teaching duties were treated as state employees *unless those duties entailed providing patient care.* The additional language added by the legislature created an "exception to the exception" which would allow physicians like Defendant to be treated as state employees whenever they were within the scope their employment and engaged in teaching duties *even if those duties included patient care.* The dichotomy recognized in *Anderson* has been legislatively removed.

### Teaching Duties

¶ 13 Our inquiry must focus on determining whether Defendant's actions during the time in question were part of "teaching." Defendant argues that her activities qualify as teaching duties because the sole reason she was present was in fulfillment of her duties as the faculty member on call to assist and supervise residents and interns when a patient needed a caesarean section procedure. *Anderson* rejected this argument because it found the dichotomy between teaching duties and practicing medicine created by the last sentence in § 152(5).

¶ 14 Although we recognize that dichotomy no longer exists, we must reject this argument as overly broad and does not give appropriate regard to the current text setting forth definitions and restrictions incorporated into the Act by the Legislature. An argument premised upon mere presence coupled with one's status as a faculty physician as a primary point of analysis, rather than the activity being performed, must fail.

¶ 15 The definitions contained in § 152(5) incorporate requirements based upon task or function, *not merely job title,* when describing the physicians and the faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University who are entitled to immunity under the Act. Were this not so, the requirements that an employee must be acting within the scope of employment and that faculty and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University must be acting in an administrative capacity or engaged in teaching duties would be superfluous, as would the restriction providing that when they are not so acting or engaged they are not employees for purposes of the Act. We must interpret statutes in a manner which renders every word and sentence operative, does not render a specific provision nugatory, and gives meaning to every provision. *In re Supreme Court Adjudication,* 1979 OK 103, 597 P.2d 1208.

¶ 16 Here, the Legislature amended the definitions describing who is an employee which are set forth in § 152(5) and must be considered to have known of the prior judicial constructions of that statute in *Anderson,* including arguments raised about the duties of faculty physicians. The only logical explanation for the form of the amendments to § 152(5) and the only way to reconcile the conflict between its parts is by concluding there was a recognition by the Legislature that the duties of medical school faculty may include some medical practice and patient treatment as a component of the teaching process. In order to qualify as an employee entitled to the benefits of the Act and to judgment on this basis as a matter of law, Defendant needed to show that she was engaged in the course and scope of her employment at the time of the alleged tort, including that she met requirements set forth in § 152(5)(b).

¶ 17 According to portions of Dr. Fish's deposition testimony contained in the record, her recall of the events of the evening was

not entirely clear but she did remember discussing the possibility of the need for a caesarean procedure with Defendant, including at one time at a nurses' station and another time which appears to be when an intrauterine pressure catheter and a fetal scalp monitor were no longer in place and medical decisions were made which Plaintiffs allege were tortious and caused them damage. Dr. Fish recalled that either she, a nurse or an intern discussed the ordering of a caesarean section procedure with Defendant.

¶ 18 In support of her claim to immunity, Defendant points to faculty policies defining "teaching" which state that "[f]aculty performing non-administrative professional and clinical duties for which they are employed shall be regarded as engaged in teaching when these activities contribute to the academic mission," and "includes the direction or supervision of students in ... clinical rotation, internships, residencies, or fellowships." In her deposition testimony Defendant recalled having some conversations with Dr. Fish, but who was present and what was being taught at various times when discussions or decision-making occurred is unclear.[5] How all the events and discussions were connected to or a part of the exercise of *teaching duties* is ambiguous, at best, based upon this record.

¶ 19 In order to qualify for immunity a faculty member must be engaged in teaching duties which are the cause of a claim. What qualifies as teaching may not be settled by reference to the broad language of the faculty policy because it is, in effect, an adoption of the rejected circular argument that a faculty physician is teaching any time he or she is in the scope of his or her employment. Applying any ordinary definition, "teaching" must include a component indicating that learning or practical experience by a student is being facilitated by the teacher.

¶ 20 Defendant had the burden to demonstrate her immunity defense to liability. She needed to show that she was engaged in teaching duties *at the time* Plaintiffs argue that negligence and a violation of medical standards by her caused them damage. On the record presented, reasonable minds could differ as to whether teaching duties were occurring at times bearing on the proof of Plaintiffs' cause of action based upon decisions regarding whether to allow Plaintiff Fager's induced labor to continue or to perform a caesarean section to deliver the Plaintiffs' child. Consequently, at this juncture Defendant has not shown she was entitled to immunity under the Act.

## CONCLUSION

¶ 21 The facts revealed by the evidentiary material presented to the trial court, considered in the light most favorable to Plaintiffs, and all reasonable inferences from those facts, are not consistent only with judgment for Defendant based upon immunity under the Act for the theories of relief urged by Plaintiffs. Accordingly, summary judgment was inappropriate, and the trial court's judgment is reversed. The case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

JOPLIN, P.J., and MITCHELL, V.C.J., concur.

---

**5.** Whether Dr. Fish or Dr. Smith had any final or ultimate authority to order a caesarean section is not determinative. The relevant inquiry is whether Defendant was engaged in a teaching process when any critical decisions upon which the Plaintiffs base their suit were made.