2008 OK 12

James M. CORR, John D. Corr, Larry M. Corr and Thomas R. Corr, IV, Plaintiffs/Appellees,

v.

Stuart Douglas SMITH, Jr., and Linda Smith, Defendants/Appellants,

and

Joyce Taylor, Jackie Martin, Patty Jo Marshall McCrocklin, The Estate of Rachel Milam Corr, The Trust Company of Oklahoma, Inc., and Connie Olsen, Defendants.

Supreme Court of Oklahoma.

Feb. 12, 2008.

Steven M. Ditto and Brent D. Coldiron, Oklahoma City, Oklahoma, for Plaintiffs/ Appellees.

Gary Shores, Oklahoma City, Oklahoma, for Defendants/Appellants.

COLBERT, J.

¶ 1 The single issue confronting the Court is whether the trial court had the statutory authority to grant the plaintiffs' application for attorney fees and costs following their successful effort to have a trust amendment and will set aside because of undue influence. We conclude that it did under the facts presented. We vacate the opinion of the Court of Civil Appeals and affirm the decision of the trial court.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 2 To fully analyze the statute at the heart of this matter, we must delve, to the degree possible, into the facts underlying the plaintiffs' successful effort to have the trust amendment and will set aside. This recitation is necessarily incomplete because the record on appeal does not contain a full transcript of the trial (an understandable omission as the judgment on the merits was not appealed). Nevertheless, the facts set forth have been carefully gleaned from the record provided in light of the trial court's judgment in the plaintiffs' favor. *See Morgan v. Galilean Health Enters.*, 1998 OK 130, ¶ 7 n. 8, 977 P.2d 357, 360–61 n. 8 ("A general verdict includes within its terms a finding favorable to the prevailing party upon every material issuable fact." (emphasis omitted)).

¶ 3 This dispute arose during the final years and subsequent death of Rachel Milam Corr, born July 17, 1901. Mrs. Corr became the second wife of Thomas Reed Corr, Jr., and the step-mother of Thomas Reed Corr, III, in the spring of 1969. The record reflects that Mrs. Corr, who had no biological children, developed a loving bond with her step-son and remained close to him and his family. Mrs. Corr also had a sister, April Marshall, who had three daughters. Mrs. Corr remained interested in the welfare of her sister, her nieces, and their children. This dispute is between Mrs. Corr's step-grandsons—James M. Corr; John D. Corr; Larry M. Corr; and Thomas R. Corr, IV—and Mrs. Corr's great-niece and her husband—Linda and Stuart Douglas Smith, Jr.[1]

1. Thomas Reed Corr, III, had four sons, Mrs. Corr's step-grandsons: Plaintiffs James M. Corr; John D. Corr; Larry M. Corr; and Thomas R. Corr, IV. April Marshall had three daughters, Mrs. Corr's nieces: Defendants Joyce Taylor, Jackie Martin, and Patty Jo Marshall McCrocklin. Defendant Linda Smith is Patty Jo Marshall McCrocklin's daughter and Mrs. Corr's great-niece. She is married to Defendant Stuart Douglas Smith, Jr. Defendant Connie Olsen was Mrs. Corr's longtime care giver until her death. Defendant The Trust Company of Oklahoma, Inc., was named in its representative capacity only and the parties agreed that there is no evidence

¶ 4 Mrs. Corr and her husband each executed revocable trusts on February 17, 1994, but only the terms of Mrs. Corr's trust are pertinent. Mrs. Corr named herself as trustee and her husband and step-son as joint successor trustees. The trustee was directed to pay, upon Mrs. Corr's death, $20,000 to Mrs. Corr's sister; $5,000 to each of Mrs. Corr's three nieces; $2,000 to "Tommy Reed Corr;" $2,000 to Linda Smith; and seven additional payments to other individuals, some of whom appear to be great-nieces and great-nephews. After those payments and provisions to take advantage of estate tax marriage deductions, the income from the remaining trust was to be split between Mr. Corr and April Marshall. Upon their deaths, the trust estate was to be distributed to Mrs. Corr's step-son or his issue. Mr. Corr and April Marshall predeceased Mrs. Corr, leaving Mrs. Corr's step-son the *de facto* beneficiary of the majority of Mrs. Corr's sizable trust.

¶ 5 The events giving rise to this litigation began to unfold in 1999. Mrs. Corr was 98 years old, profoundly deaf, and largely bed-ridden, but continued to live in her own home, attended by paid nurses. Although members of the Corr family and family friends visited her frequently, no one lived in the immediate area. Mrs. Corr's step-son lived in Alaska and was ill. Her long-time pastor, Dr. Gene Garrison, and his wife, Martha, who were also Mrs. Corr's long-time friends, had recently moved out of state.

¶ 6 Linda and Stuart Smith came from their home in Georgia to stay in Mrs. Corr's home in late 1999. On December 29, 1999, they hired E. Elaine Schuster as Mrs. Corr's new attorney. This is reflected by a contract of attorney employment signed by the Smiths and Mrs. Corr.[2] That same day, Ms. Schuster came to Mrs. Corr's home and obtained her signature on a document giving Stuart Smith a power of attorney and Linda Smith a secondary power of attorney. Ms. Schuster then demanded financial records

from Mrs. Corr's step-son and from Mrs. Corr's accountant and long-time friend, Warren Crum. When Mr. Crum did not comply, he was fired and Ms. Schuster hired a new accountant for Mrs. Corr.

¶ 7 At this point, the Corr family and Mrs. Corr's friends were largely excluded from her life. Armed guards were posted outside of Mrs. Corr's home and security cameras were installed. Her step-son was barred from entering the home on February 16th and 17th. His sons were also prevented from contacting or visiting Mrs. Corr. However, Mrs. Corr's step-nephew, Edwin Corr (a professor at the University of Oklahoma and former United States ambassador), was allowed to enter the home to visit with Mrs. Corr on February 18th. According to him, she did not know that her step-son had tried to visit and stated that she wanted her step-son to visit and asked Edwin Corr to come again. After that, Edwin Corr was barred from further contact with Mrs. Corr.

¶ 8 On February 16, 2000, Mrs. Corr executed an amendment to her trust naming Stuart Smith co-trustee and successor trustee, effectively disinheriting the Corr family, and substituting Mrs. Corr's nieces as the primary beneficiaries. The Smiths and Mrs. Corr also signed a new contract of attorney employment with Ms. Schuster reflecting the change in circumstances brought about by the fact that Mrs. Corr's step-son had named Stuart Smith in a lawsuit over the power of attorney. Mrs. Corr then executed a new will on March 3, 2000, to reflect the changes in the trust amendment.

¶ 9 The Corr family regained access to Mrs. Corr in the beginning of March. On March 11, 2000, Mrs. Corr executed a new power of attorney in favor of Martha Garrison, who then retained a new attorney for Mrs. Corr. The district court declared on March 16, 2000, that Mrs. Garrison's power of attorney superceded Stuart Smith's. Ms. Schuster refused to accept the court's deci-

---

of wrongdoing on its part. Only Defendants Linda and Stuart Smith are subject to the award of attorney fees at issue here.

**2.** Although the Smiths signed at least four contracts for attorney employment with Ms. Schus-

ter, sometimes with Mrs. Corr and sometimes on their own, they paid none of Ms. Schuster's fees. Ms. Schuster testified that she expected to receive payment only from Mrs. Corr.

sion and, after the hearing, went to Mrs. Corr's home, insisted that she was still Mrs. Corr's attorney, and refused to leave until Mrs. Garrison fired her.[3] Stuart Smith was also removed from Mrs. Corr's home the same day.

¶ 10 After Stuart Smith and Ms. Schuster left Mrs. Corr's home, the Smiths executed a third attorney employment contract with Ms. Schuster at her office. The next day, March 17, 2000, the Smiths, represented by Ms. Schuster, successfully obtained a special guardianship over Mrs. Corr based on their representations that she was incompetent. It is unclear whether Mrs. Corr received notice of the petition for the special guardianship (the record contains nothing to indicate that she did), but the attorney retained on Mrs. Corr's behalf by Mrs. Garrison was certainly given no notice. The special guardianship rendered void the court-approved power of attorney Mrs. Corr had just given Mrs. Garrison. (There is nothing in the record to indicate whether Ms. Schuster informed the guardianship judge about the previous day's hearing and ruling on the competing powers of attorney.) Once again, the Corr family and friends were excluded from Mrs. Corr's home.

¶ 11 On July 14, 2000, the district court determined that Mrs. Corr remained partially incapacitated and appointed The Trust Company of Oklahoma (TCO) general guardian of her personal property. The Smiths, still represented by Ms. Schuster, were retained as guardians of Mrs. Corr's person. Mrs. Corr was represented by a separate attorney retained by Ms. Schuster.

¶ 12 Mrs. Corr's step-son died on September 22, 2001. On February 15, 2002, his sons filed this lawsuit to have the February 16, 2000, trust amendment and the March 3, 2000, will set aside as the products of undue influence, fraud, or duress. Mrs. Corr died on June 7, 2002, and TCO was appointed Personal Representative of her estate. In an order filed February 13, 2004, Ms. Schuster was declared disqualified from representing the Smiths and the other defendants. In an order filed February 14, 2004, the probate

case was consolidated with this case and the matter ultimately proceeded to trial.

¶ 13 The district court concluded that the trust amendment and will had been obtained through undue influence and declared them void. At a hearing to clarify the court's reasons for the judgment, the trial judge stated:

[N]ot only did [the court] find that there was a trust or the confidential relationship between Rachel Corr and [the Smiths], that they were also active in the procurement or preparation of the will. The court considered the fact that Ms. Corr was, in fact, elderly. I can't remember the exact age, but it was in the 90s somewhere, and that she had impaired faculties with respect to at least she was very hard of hearing.

One of the factors that the court looked at in determining if there was undue influence was whether there was independent and disinterested advice given the will maker. In this particular case there was testimony that the attorney Elaine Schuster was the attorney that prepared both the trust and the will. She had been contacted I think initially by Mr. Smith to prepare the will and the trust. Factors that the court will look at in determining whether [there] has been independent and disinterested advice are things such as whether there had been a full and private consultation between—in this case between Elaine Schuster and Rachel Corr regarding the disposition of her estate. The court did not believe that there was such a consultation between Ms. Schuster and Ms. Corr.

Another factor is whether or not Ms. Schuster did, in fact, give competent advice as to the effect of the disposition of Ms. Corr's estate. The court believes that Ms. Schuster probably was competent to prepare the will and the trust. The court, however, certainly questioned whether or not it was made clear, and does not believe it was made clear to Ms. Corr exactly what she was doing with her estate.

---

3. This refusal continued through Ms. Schuster's testimony during the trial of this matter when she engaged in an argument on the subject with counsel.

Most importantly though, however, the court felt that Ms. Schuster was not sufficiently disinterested from the interest of the defendants in this case in order to give impartial and confidential advice. The court, to be quite honest, felt that Ms. Schuster was looking more after the defendants' interest as opposed to Ms. Corr's interest.

The court found the evidence of undue influence so compelling that, even though a presumption of undue influence was warranted, it was almost unnecessary. *See In re Estate of Holcomb*, 2002 OK 90, ¶¶ 18–19, 63 P.3d 9, 15–16. When clarified using *nunc pro tunc* orders, the final judgment ultimately declared the 2000 trust amendment and will void, leaving Mrs. Corr's pre–2000 trust and will intact without the changes obtained by the Smiths.[4]

¶ 14 The Corrs then filed a motion for costs and attorney fees. The trial court granted the motion and awarded costs of $12,991.06, and attorney fees of $94,532.50 against the Smiths. The Smiths appealed and the Court of Civil Appeals reversed. The Corrs filed a petition for certiorari which was granted by this Court.

## II. STANDARD OF REVIEW

■ ¶ 15 The sole issue presented on appeal is whether the district court had the authority to award attorney fees.[5] This presents a question of law which we review *de novo. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, ¶ 5 n. 1, 932 P.2d 1100, 1103 n. 1.

## III. DISCUSSION

■ ¶ 16 The Corrs based their request for attorney fees on section 175.57(D) of title 60, which permits an award of attorney fees in a case involving a trust.

In a judicial proceeding involving a trust, the court may in its discretion, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust which is the subject of the controversy.

Okla. Stat. tit. 60, § 175.57(D) (2001). The Corrs argue that the plain language of section 175.57(D) authorizes the court to award attorney fees because this was "a judicial proceeding involving a trust." The Smiths counter that section 175.57 applies only to actions for breach of trust and that this action to have a trust amendment and will set aside was not an action for breach of trust.

¶ 17 The fact that the Corrs' remedy was in the form of a declaration that the trust amendment and will are void for undue influence does not necessarily preclude a conclusion that the statute applies. *See Burrows Constr. Co. v. Indep. Sch. Dist. No. 2*, 1985 OK 57, ¶ 8, 704 P.2d 1136, 1138 (underlying nature of suit determines application of fee-shifting statute). The essence of this action was for breach of fiduciary duty and of trust and there can be no question that there was, in the end, a breach of trust.

■ ¶ 18 Stuart Smith, who already owed a fiduciary duty to Mrs. Corr as her attorney-in-fact, was in breach of trust from the moment he succeeded in being named trustee.[6]

A trustee is a fiduciary of the highest order in whom the hope and confidence of the settlor are placed with the expectation that the trustee will exercise the obligations of the office for the exclusive benefit of those holding beneficial interests. Without exception, a trustee owes its beneficiaries the most abundant good faith, absolute and perfect candor, openness and honesty.

---

4. The record indicates that Mrs. Corr may have made changes in these documents since she first executed them in 1994, but the effect of those changes is not clear. Regardless, those intervening changes were not at issue and were not affected by the trial court's final judgment.

5. The Smiths raised the issue of the amount of the award in their petition in error but did not

address that issue in their brief, resulting in its waiver. Okla. Sup.Ct. R. 1.11(k)(1).

6. Because the Uniform Trust Act applies only to express trusts, it would not apply to actions taken before Mrs. Corr named Stuart Smith trustee. Okla. Stat., tit. 60, § 175.3(F) (2001). Those actions, however, can illuminate the actions Smith took after he was named trustee.

*Smith v. Baptist Found. of Okla.,* 2002 OK 57, ¶ 28, 50 P.3d 1132, 1144 (footnotes omitted). Although the Smiths exercised undue influence to cause Mrs. Corr to amend her trust, their undue influence did not stop when she executed the amendment. The Smiths used their influence to physically and emotionally isolate Mrs. Corr from other family members and friends. In league with Ms. Schuster, the Smiths used their influence to cause Mrs. Corr to change her will, a direct breach of trust. The Smiths, again in league with Ms. Schuster, used the district court to obtain a special guardianship over Mrs. Corr by avowing that she was incompetent only 14 days after they influenced her to change her will without court oversight, impliedly relying on her competence. They obtained the guardianship to deliberately avoid the effect of the district court's recognition of the competing power of attorney just the day before, in defiance of Mrs. Corr's wishes and without giving notice to her new attorney and, probably, to her.

¶ 19 Again, there can be no question that there was a breach of trust underlying the Corr's claim. We are mindful that this situation may not fall within a literal reading of the statutory definition of "breach of trust" in section 175.57(A). However, a careful statutory analysis supports the conclusion that the award of attorney fees contemplated in section 175.57(D) is not limited to those strict confines.

¶ 20 Section 175.57, effective June 10, 1999, is part of the Oklahoma Trust Act. Okla. Stat. tit. 60, §§ 175.1 through 175.57 (2001).[7] A "breach of trust" is defined in subsection A as a "violation by a trustee of a duty the trustee owes a beneficiary." With the exception of subsection D, section 175.57 addresses almost exclusively actions for "breach of trust." The only other exception is found in subsection H, which provides protections for third parties participating in contracts with the trust.

■ ¶ 21 Courts review a statute to determine the legislature's intent and, once a court has determined what the legislature's intent was, that intent controls the interpretation and application of the law. *Tulsa County Deputy Sheriff's Fraternal Order of Police v. Bd. of County Comm'rs,* 2000 OK 2, ¶ 10, 995 P.2d 1124, 1128; *TXO Prod. Corp. v. Okla. Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 968–69. Rules of statutory construction are employed only when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity or conflict with other statutes. *Cooper v. State ex rel. Dep't. of Pub. Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

¶ 22 The Smiths assert that section 175.57 is ambiguous because subsection D authorizes an award of attorney fees in "a judicial proceeding involving a trust," while most of this lengthy statute addresses only a "breach of trust." The Smiths urge this Court to apply a basic rule of statutory interpretation used in the event of statutory ambiguity-to consider all of the statutes on a particular subject and give effect to them as a whole. *Tulsa County,* 2000 OK 2, ¶ 10, 995 P.2d at 1129. They contend that the application of this rule requires the conclusion that an award of attorney fees pursuant to subsection D is authorized only when there has been a "breach of trust" as defined in subsection A.

■ ¶ 23 We decline to apply that rule of statutory interpretation because we have concluded that the statute is not ambiguous. *See Cooper,* 1996 OK 49, ¶ 10, 917 P.2d at 468 (rules of construction employed only when legislative intent not ascertainable from statutory language due to ambiguity or conflict). The distinction between the terms "judicial proceeding involving a trust" and "breach of trust" is readily apparent. We will not assume that the legislators were unaware that subsection D used the broader term "judicial proceeding involving a trust." Indeed, we must presume that "the legislature has expressed its intent in a statute and that it intended what it so expressed." *TXO,* 1992 OK 39, ¶ 7, 829 P.2d at 969. Using this

---

7. Section 175.57 has been cited in only three published cases since its enactment. *Smith v. Baptist Found. of Okla.,* 2002 OK 57, 50 P.3d 1132; *Pezold, Richey, Caruso & Barker, P.P.C. v.* *Cherokee Nation Indus.,* 2002 OK CIV APP 43, 52 P.3d 430; and *Atwood v. Atwood,* 2001 OK CIV APP 48, 25 P.3d 936.

fundamental rule of statutory analysis, we conclude that section 174.57(D) unambiguously authorized the trial court to grant the Corrs' request for an award of attorney fees in this "judicial proceeding involving a trust." [8]

¶ 24 This conclusion is supported by another source of authority not addressed by the parties. The Oklahoma Trust Act was first adopted in 1941 from the Uniform Trusts Act of 1937 proposed by the National Conference of Commissioners on Uniform State Laws. *See* Notes accompanying Okla. Trust Act, Okla. Stat. tit. 60, §§ 175.1 through 175.57 (2001); Prefatory Note, Uniform Trust Code Ref. & Annos. (2006). The Uniform Trusts Act of 1937 was superceded by the Uniform Trust Code. Oklahoma retained the Trust Act, but incorporated portions of the Uniform Trust Code when it adopted section 175.57 in 1999.

¶ 25 Section 175.57 incorporates nine independent sections, 1001 through 1009, of article 10 of the Uniform Trust Code: "Liability of Trustees and Rights of Persons Dealing with Trustee." Section 1004 of the Uniform Trust Code became Oklahoma's section 175.57(D). Thus, Oklahoma's subsection D was conceived as a stand-alone provision by the Commissioners on Uniform State Laws. This supports our conclusion that its authorization of attorney fee awards in "judicial proceedings involving a trust" is not limited by the other subsections' focus on a strictly defined "breach of trust."

¶ 26 The comments to the Uniform Trust Code further support this conclusion. In the general comment to article 10, the Commissioners on Uniform State Laws stated that "section 1004 [Oklahoma's section 175.57(D) ] reaffirms the court's power in equity to award costs and attorney's fees as justice requires." The specific comment to section 1004 of the Uniform Trust Code provides further clarity:

> This section ... codifies the court's historic authority to award costs and fees, including reasonable attorney's fees, in judicial proceedings grounded in equity. The

court may award a party its own fees and costs from the trust. **The court may also charge a party's costs and fees against another party to the litigation.**

(Emphasis added.) Under the circumstances presented here, the trial court acted as a court of equity and had the statutory authority to award attorney fees and costs to the Corrs against the Smiths. *See Atwood v. Atwood,* 2001 OK CIV APP 48, ¶ 46 n. 12, 25 P.3d 936, 947 n. 12.

¶ 27 We are mindful of the concern voiced by the Court of Civil Appeals:

> [a] literal interpretation of the phrase "[i]n a judicial proceeding involving a trust," would allow the court to exercise its discretion to allow attorney fees any time a trust was a party in litigation or merely involved, as long as the court found justice and equity required the fees.

COCA's concern was that such a broad interpretation would create the exception that swallows the rule that a party must generally bear its own attorney fees. *See id.* ¶¶ 41–45, 25 P.3d at 946–47. In this case, however, Mrs. Corr's trust was the target of the Smiths' actions and they were in "breach of trust" from the moment they succeeded in having her execute the amendment. This is precisely the kind of situation where equity permits and compels the result sanctioned by section 175.57(D) as originally proposed by the Commissioners of the Uniform Laws and adopted by the Oklahoma Legislature. Such a result would not be appropriate in the case envisioned by COCA where a trust simply happened to be a party to a matter that did not invoke the court's equitable powers.

## IV. CONCLUSION

¶ 28 The trial court had the authority under section 175.57(D) to grant the Corrs' request for attorney fees and costs against the Smiths. This conclusion is supported by the unambiguous language of section 175.57(D).

---

**8.** Nor does the fact that Mrs. Corr's will was involved avoid the application of section 175.57(D) to the entire matter as the underlying claims each implicate Mrs. Corr's trust. *See Atwood v. Atwood,* 2001 OK CIV APP 48, ¶ 66, 25 P.3d 936, 950.

THE COURT OF CIVIL APPEALS' OPINION IS VACATED, AND THE DISTRICT COURT'S JUDGMENT IS AFFIRMED.

EDMONDSON, V.C.J., KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ., concur.

OPALA, J., concurs in result.

WINCHESTER, C.J., HARGRAVE, J., dissent.