Dear Representative Roan:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Do the provisions of 70 O.S.Supp. 2007, § 3311[ 70-3311](E)(2)(b), [1] which describe the psychological evaluation required before any person can be certified as a police or peace officer in this State, relieve Oklahoma psychologists from the duty to comply with any of the relevant rules, regulations, or ethical obligations imposed upon them by the Psychologists Licensing Act, 59 O.S. 2001 Supp. 2007, §§ 1351-1376, when participating in evaluations under Section 3311(E)(2)(b)?
 I. Introduction
Your question requires an analysis of the intersection of two different legislative enactments on one specific point. Those two enactments are the Psychologists Licensing Act, 59 O.S. 2001 Supp. 2007, §§ 1351-1376, which generally governs the practice of psychology in this State, and the Council on Law Enforcement Education and Training statute, 70 O.S.Supp. 2007, § 3311[70-3311], which generally regulates the certification, training, and discipline of police and peace officers in this State. Your question arises regarding the effect of the two enactments on the execution of Section 3311's requirement that all prospective police and peace officers undergo a psychological examination prior to being certified by the State and that such examinations involve the assistance of a state-licensed psychologist. To effectively address your question, we will first describe each of these enactments in some detail. *Page 2 
 II. The Psychologists Licensing Act
The practice of psychology is regulated in Oklahoma by the provisions of the Psychologists Licensing Act ("PLA"), 59 O.S. 2001 Supp. 2007, §§ 1351-1376. The PLA established the Oklahoma State Board of Examiners of Psychologists ("Psychologists Board") to "regulate the practice of psychology in this state[,] . . . adopt and promulgate standards of professional conduct for psychologists[,]" and "enforce the standards and rules and regulations promulgated pursuant to the provisions of the [PLA]" in addition to other duties. 59 O.S. 2001, § 1352.1[59-1352.1](1), (7), (9). Specific authority has been granted to the Psychologists Board to "publish a code of ethics" applicable to psychologists in this State. 59 O.S.Supp. 2007, § 1361[59-1361]. Pursuant to this authority, the Psychologists Board has adopted as its Code of Ethics both the 2002 revision of the American Psychological Association's ("APA") "Ethical Principles of Psychologists and Code of Conduct" and the 2005 version of the Code of Conduct of the Association of State and Provincial Psychology Boards ("ASPPB").[2] OAC 575:10-1-10(a), (b). In addition to particular requirements contained in the PLA, these ethical provisions represent the professional standards of care expected of psychologists licensed by the State of Oklahoma. Psychologists who practice outside these ethical bounds are subject to disciplinary action by the Psychologists Board. 59 O.S. 2001, § 1370[59-1370](B)(16).
The practice of psychology in Oklahoma is defined by the PLA to mean:
 [T]he observation, description, evaluation, interpretation, and modification of human behavior by the application of psychological principles, methods, and procedures, for the purpose of preventing or eliminating symptomatic, maladaptive, or undesired behavior and of enhancing interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, and mental health.
59 O.S.Supp. 2007, § 1352[59-1352](3). This practice is further defined by statute to include:
 [P]sychological testing and the evaluation or assessment of personal characteristics, such as intelligence, personality, abilities, interests, aptitudes, and neuropsychological functioning; counseling, psychoanalysis, psychotherapy, hypnosis, biofeedback, and behavior analysis and therapy; diagnosis and treatment of mental and emotional disorder or disability, alcoholism and substance abuse, disorders of habit or conduct, as well as the psychological aspects of physical illness, accident, injury, or disability; and psychoeducational evaluation, therapy, remediation, and consultation. *Page 3 
Id. Anyone providing such services while using any title or description of services that incorporates the words "psychology," "psychological," or "psychologist," is deemed by law to be subject to the provisions of the PLA. Id. § 1352(2).
Oklahoma psychologists are obligated by law to "conduct their professional activities in conformity with ethical and professional standards promulgated by the [Psychologists Board]." Id. § 1370(A). Several such ethical and professional standards are implicated in the context of your question. For instance, under standards adopted pursuant to the PLA, "Psychologists administer, adapt, score, interpret, or use assessment techniques, interviews, tests, or instruments in a manner and for purposes that are appropriate in light of the research on or evidence of the usefulness and proper application of the techniques." APA Ethical Standard 9.02(a) (2002). The Psychologists Board also determined that "[w]hen interpreting assessment results, including automated interpretations, psychologists take into account the purpose of the assessment as well as the various test factors, test-taking abilities, and other characteristics of the person being assessed." Id. 9.06. Oklahoma psychologists are also required to "indicate any significant limitations of their interpretations." Id. Several other ethical and professional standards also apply to the selection, use, and interpretation of assessment instruments by psychologists in this State.See id. 9.01, 9.07, 9.09; ASPPB III. Rules of Conduct A.6, A.10, I.3.
Both prior and subsequent to the relevant amendment to Section 3311, which is discussed in detail in the following section, the Psychologists Board determined that psychological evaluations conducted pursuant to Section 3311 require a face-to-face meeting between the psychologist and prospective peace or police officer who is being evaluated. See Letter from Thomas J. Vaughn, PhD, ABPP, Director of Professional Affairs, Board of Examiners of Psychologists, to John A. Call, Ph.D., J.D., ABPP 
Douglas O. Brady, Ph.D. (Feb. 10, 2006) (on file with the Psychologists Board). The position described in this letter was subsequently reaffirmed at the open meetings of the Psychologists Board on November 17, 2007 and May 17, 2008.[3]
 III. 2007 Amendments to Section 3311(E)(2)(b) Regarding Psychological Evaluations for Prospective Peace and Police Officers *Page 4 
Originally enacted in 1965, 70 O.S.Supp. 2007, § 3311[70-3311], establishes the Council on Law Enforcement Education and Training ("CLEET"). Among other things, Section 3311 charges CLEET with the responsibility to promulgate rules regarding the certification and training of police and peace officers in this State as well as to identify needs and provide education to professionalize Oklahoma law enforcement officers, agencies, and efforts. Id. § 3311(B)(1), (2). The statute also establishes criteria which must be met by any person desiring to attend a basic police course in this State or to become certified as a police or peace officer in Oklahoma. Id. One such criterion is a psychological evaluation which establishes that the person "is suitable to serve as a peace officer in the State of Oklahoma." Id.
§ 3311(E)(2)(b).
The broad public policy purpose underlying Section 3311 is to "upgrad[e] Oklahoma law enforcement to professional status." See 70 O.S.Supp. 2007, § 3311[70-3311](B)(1). To help professionalize our law enforcement agencies and officers, the Legislature has indicated that only those applicants who are psychologically suitable for the work should be certified as peace or police officers. For instance, Section 3311(E)(1) makes anyone who "has been diagnosed by a licensed physician or psychologist as being afflicted with a substantial disorder of thought, mood, perception, psychological orientation, or memory that significantly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life" and for whom "such condition continues to exist" ineligible to complete a basic police course in this State. In addition, Section 3311(E)(2)(b) requires every prospective police or peace officer in Oklahoma to be evaluated and certified as psychologically suitable for such duty.
The provisions describing the psychological evaluations required of applicants to become police or peace officers in this State were amended in 2007 pursuant to House Bill 1618. Prior to the amendments included in H.B. 1618, the language of 70 O.S.Supp. 2006, § 3311[70-3311](E)(2), provided, in pertinent part, that "[n]o person shall be certified as a police or peace officer in this state" unless the person's employing agency reported to CLEET that:
 [S]uch person has undergone psychological evaluation such as the Minnesota Multiphasic Personality Inventory, the California Psychological Inventory (CPI), or other psychological instrument approved by the Council on Law Enforcement Education and Training. The psychological instrument utilized shall be evaluated by a psychologist licensed by the State of Oklahoma, and the employing agency shall certify to the Council that the evaluation was conducted in accordance with this provision and that the employee/applicant is suitable to serve as a peace officer in the State of Oklahoma. Nothing herein shall preclude a psychologist licensed in the state from employing additional psychological techniques to assist the employing agency's determination of the employee/applicant's suitability to serve as a peace officer in the State of Oklahoma.
Id. § 3311(E)(2)(b).
The 2007 amendment added language to the subsection and struck portions of the original language as follows: *Page 5 
 [S]uch person has undergone psychological evaluation such as the Minnesota Multiphasic Personality Inventory, the California Psychological Inventory (CPI), or other by the employing agency using a
psychological instrument approved by the Council on Law Enforcement Education and Training. The employing agency shall administer the psychological instrument in accordance with standards established within the test document. To aid the evaluating psychologist in interpreting the test results, including automated scoring and interpretations, the employing agency shall provide the psychologist a statement confirming the identity of the individual taking the test as the person who is employed or seeking employment as a peace officer of the agency and attesting that it administered the psychological instrument in accordance with standards within the test document. The psychologist shall report to the employing agency the evaluation of the assessment instrument and may include any additional recommendations to assist the employing agency in determining whether to certify to the Council on Law Enforcement Education and Training that the person being evaluated is suitable to serve as a peace officer in the State of Oklahoma. No additional procedures or requirements shall be imposed for performance of the psychological evaluation. The psychological instrument utilized shall be evaluated by a psychologist licensed by the State of Oklahoma, and the employing agency shall certify to the Council that the evaluation was conducted in accordance with this provision and that the employee/applicant is suitable to serve as a peace officer in the State of Oklahoma. Nothing herein shall preclude a psychologist licensed in the state from employing additional psychological techniques to assist the employing agency's determination of the employee/applicant's suitability to serve as a peace officer in the State of Oklahoma.
2007 Okla. Sess. laws ch. 14, § 1(E)(2)(b) (amending 70 O.S.Supp. 2006, § 3311[70-3311](E)(2)(b)).
 IV. The Effect of the Amendments to Section 3311 And the Confluence of the Two Enactments
In answering your question, we must first determine the intent of the Legislature in enacting the PLA, second determine the intent of the Legislature in amending Section 3311, and finally consider the relationship between the PLA and the amended Section 3311. "The primary goal of statutory interpretation is to ascertain and follow the intent of the Legislature." Estes v. ConocoPhillips Co., 184 P.3d 518, 525 (Okla. 2008). "Legislative intent governs statutory interpretation and this intent is generally ascertained from a statute's plain language." Stateex rel. Okla. State Dep't of Health v. Robertson, 152 P.3d 875, 877-78
(Okla. 2006). Moreover, it is presumed that "the Legislature expressed its intent and intended what it expressed, and statutes are interpreted to attain that purpose and end, championing the broad public policy purposes underlying them." Estes, 184 P.3d at 525. Therefore, statutes are to be interpreted "in a manner which renders every word and sentence operative, does not render a specific provision nugatory, and gives meaning to every provision." Boyd v. Tietze, 172 P.3d 639, 643
(Okla.Civ.App. 2007). "Rules of *Page 6 
statutory construction are employed only when legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity or conflict with other statutes." Corr v. Smith, 178 P.3d 859, 864
(Okla. 2008).
The intent of the Legislature in enacting the PLA is abundantly clear. The PLA makes plain that the purpose of the act is to define the practice of psychology and create the Psychologists Board to regulate such practice in this State, examine and license those wishing to practice psychology here, promulgate rules and ethical requirements for Oklahoma psychologists, and investigate complaints against and discipline psychologists as necessary, in addition to other powers and duties. See 59 O.S. 2001 Supp. 2007, §§ 1351-1376.
The intent of the Legislature in amending Section 3311 is likewise clear. First, the Legislature intended to effectively strip from psychologists any duty they may have had under the PLA pursuant to the previous version of Section 3311 to fully test and evaluate the psychological suitability of prospective peace or police officers in accordance with the standards implemented pursuant to the PLA and, instead, to place that duty solely upon the prospective officers' employing agencies.
Second, the amendment intended for licensed psychologists to interpret and report the results of the psychological tests administered by the employing agencies, but to have no larger role in determining the suitability of would-be law enforcement officers other than having the option to include in such reports "any additional recommendations to assist the employing agenc[ies] in determining whether to certify to [CLEET]" that the applicants are suitable. 70 O.S.Supp. 2007, § 3311[70-3311](E)(2)(b).
Third, by including the new language expressly prohibiting additional procedures and deleting the previous provision which specifically allowed the evaluating psychologists to use any additional techniques in arriving at a recommendation regarding an applicant's suitability to serve as a peace or police officer, the Legislature clearly intended to limit, without regard to applicable ethical standards adopted pursuant to the PLA, the scope of psychological evaluations conducted pursuant to Section 3311(E)(2)(b).
And, finally, by continuing to mandate, though strictly limiting, the involvement of a "psychologist licensed by the State of Oklahoma," the Legislature intended to create the appearance that a meaningful psychological evaluation will be performed on every prospective peace or police officer in the State before he or she is certified to carry a weapon or authorized to enforce the laws of the land. Id. Apparently, the Legislature's desire to create such an appearance hails back to the broad public policy embraced by the CLEET statute: that of upgrading Oklahoma law enforcement personnel and efforts to professional status. See 70 O.S.Supp. 2007, § 3311[70-3311](B)(1).
Because the intentions of the Legislature in enacting both the PLA and the amended Section 3311(E)(2)(b) are clear, we must next determine if there is any conflict between the two statutes. We find that a conflict does exist. The conflict arises because the CLEET statute limits the scope of the psychological evaluation to the interpretation of the psychological test results for prospective peace or police officers, while ethical *Page 7 
provisions adopted by the Psychologists Board pursuant to the PLA may require additional procedures to accomplish such an evaluation. Oklahoma psychologists are expected to "take into account the purpose of the assessment as well as the various test factors, test-taking abilities, and other characteristics of the person being assessed, such as situational, personal, linguistic, and cultural differences, that might affect psychologists' judgments or reduce the accuracy of their interpretations." APA Ethical Standard 9.06 (2002). Moreover, they are to "base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, . . . on information and techniques sufficient to substantiate their findings." Id. 9.01(a). Thus, a psychologist, licensed in Oklahoma, who undertakes to interpret the results of a psychological instrument administered by an employing agency may have to employ procedures beyond those outlined in Section 3311(E)(2)(b), such as obtaining more personal information about or even having personal contact with the applicant, before he or she can ethically form or report an opinion about those results under the PLA. 59 O.S. Supp. 2007, §§ 1361[59-1361], 1370.
Because of this conflict, we must determine how to reconcile the two enactments. "When there is a conflict between two statutes, one specific and one general, the statute enacted for the purpose of dealing with the subject matter controls over the general statute." Phillips v. Hedges,124 P.3d 227, 231 (Okla. 2005). Similarly, "[i]t is a settled rule when construing seemingly conflicting statutes that a specific statute controls over a more general one and that the most recent enactment controls over an earlier one." S. Okla. Resource Ctr. v. Sparks,136 P.3d 738, 741 (Okla.Civ.App. 2006). In this case, the CLEET statute deals specifically with the procedures required for psychological evaluations of prospective police or peace officers while the PLA applies to the practice of psychology generally. Moreover, Section 3311(E)(2)(b) is the later-enacted statute, having been amended in 2007 while the applicable sections of the PLA were last amended in 2004. See 59 O.S.Supp. 2007, §§ 1361[59-1361], 1370. Therefore, because it is presumed that "the Legislature expressed its intent and intended what it expressed,"[4] the command that "[n]o additional procedures or requirements shall be imposed for performance of the psychological evaluation[s]" undertaken by licensed psychologists pursuant to Section 3311(E)(2)(b) must mean that the Legislature intended for such evaluations to be removed from the purview of the ethical requirements recited above. Thus, the amended Section 3311(E)(2)(b) relieves licensed Oklahoma psychologists from the obligation of complying with those ethical standards imposed by the Psychologists Board pursuant to the PLA, which may normally require personal contact with a subject or other procedures before an interpretation of the subject's test results or an opinion about such a person's fitness for a particular profession can be issued. See APA Ethical Standard 9.01, 9.06 (2002). Of course, this narrow legislative dispensation applies only to evaluations conducted pursuant to Section 3311(E)(2)(b). *Page 8 
Anecdotal evidence suggests that the motivating force behind the Legislature's intentions in amending Section 3311(E)(2)(b) was the desire to cut the costs to employing agencies that were associated with the more comprehensive psychological evaluations required under the previous version of the statute. Although the Legislature is certainly entitled to consider efficiency and costs when amending statutory provisions, it appears that the Legislature's enthusiasm to forestall what it apparently considered to be excessive fees charged by psychologists in conducting CLEET evaluations may have resulted in unintended and, perhaps, detrimental consequences. For instance, by giving to the employing agencies rather than licensed psychologists the duty to determine the suitability of prospective peace or police officers, the Legislature has in essence opted to have lay examiners, who are required to have no training or specialized knowledge, decide whether law enforcement applicants are psychologically sound. Thus, in order to save money in evaluation fees, the imposition of the duty upon local law enforcement agencies to determine the psychological suitability of their hires may unintentionally expose such agencies to significant potential monetary liability should any of those officers certified by the employing agencies cause injuries while in the line of duty and then be shown to have been psychologically unsuitable for initial employment as law enforcement officers. In addition, by strictly prohibiting any "additional procedures or requirements" from being utilized in evaluating the psychological suitability of peace and police officer candidates, the Legislature has denied individual agencies the option of conducting additional or more thorough evaluations, even if such agencies find more thorough evaluations are desirable or have historically required such. 70 O.S. Supp. 2007, § 3311[70-3311](E)(2)(b). Moreover, we assume oversight problems may develop in circumstances, such as this instance, where the Legislature has created a public body to oversee the licensing and ethical practice of a certain profession, but then exempts licensees from such oversight in certain circumstances and does so in a statute that is not related to the profession's licensing act.
Nevertheless, our only task here is to answer the question of whether the Legislature has, in amending Section 3311(E)(2)(b), relieved Oklahoma psychologists from the obligation to comply with certain ethical or professional standards that may require procedures in addition to those specifically outlined in the statute when evaluating psychological test results pursuant to the CLEET statute. As explained above, we find the answer to this question is yes.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The Legislature intended to effectively strip from psychologists any duty they may have had under the Psychologists Licensing Act ("PLA") pursuant to the previous version of Section 3311(E)(2)(b) of Title 70 to fully test and evaluate the psychological suitability of prospective peace or police officers in accordance with the standards implemented pursuant to the PLA and, instead, to place that duty solely upon the prospective officers' employing agencies.
 2. The amendment intended for licensed psychologists to interpret and report the results of the psychological tests administered by the employing *Page 9 agencies, but to have no larger role in determining the suitability of would-be law enforcement officers other than having the option to include in such reports "any additional recommendations to assist the employing agenc[ies] in determining whether to certify to [CLEET]" that the applicants are suitable. 70 O.S.Supp. 2007, § 3311[70-3311](E)(2)(b).
 3. By including the new language expressly prohibiting additional procedures and deleting the previous provision which specifically allowed the evaluating psychologists to use any additional techniques in arriving at a recommendation regarding an applicant's suitability to serve as a peace or police officer, the Legislature clearly intended to limit, without regard to applicable ethical standards adopted pursuant to the PLA, the scope of psychological evaluations conducted pursuant to Section 3311(E)(2)(b). Id.
 4. By continuing to mandate, though strictly limiting, the involvement of a "psychologist licensed by the State of Oklahoma," the Legislature intended to create the appearance that a meaningful psychological evaluation will be performed on every prospective peace or police officer in the State before he or she is certified to carry a weapon or authorized to enforce the laws of the land.
 5. Therefore, the provisions of 70 O.S.Supp. 2007, § 3311[70-3311](E)(2)(b), limiting the scope of the psychological evaluations required of prospective peace or police officers in this State, relieve Oklahoma psychologists from the obligation to comply with those rules, regulations, or ethical obligations imposed upon them by the Psychologists Licensing Act, 59 O.S. 2001 Supp. 2007, §§ 1351-1376, which may require procedures in addition to those specifically outlined in Section 3311(E)(2)(b), in conducting such evaluations.
W.A. DREW EDMONDSON Attorney General of Oklahoma
PRESTON SAUL DRAPER Assistant Attorney General
[1] Section 3311 was amended in the 2008 legislative session, but the amendments are not germane to your question. See 2008 Okla. Sess. Laws ch. 143, § 1 (eff. date Nov. 1, 2008) (amending 70 O.S.Supp. 2007, § 3311[70-3311]).
[2] The ASPPB Code of Conduct was only adopted in part. See OAC575:10-1-10(b).
[3] See Minutes of the Bd. of Examiners of Psychologists at its Meeting, Nov. 17, 2007 and May 17, 2008 (on file with the Psychologists Board).
[4] Estes, 184 P.3d at 525. *Page 1