**FIELD v. SPENCER et al.**

No. 25810.   Jan. 14, 1936.

Rehearing Denied February 11, 1936.

George L. Zink and Jesse R. Field, for plaintiff in error Field.

R. Place Montgomery, for defendants in error Tober et al.

Carder & Carder, for defendant in error Spencer.

PHELPS, J.   This is an action for an accounting in equity, wherein the plaintiff sought discovery of the transactions of the defendant over a period of years, covering rental and income received by defendant from certain property, and disbursements made by him on said property during his stewardship thereover as rental agent.   It also involved construction of many instruments of conveyance and assignments, including reformation of a deed, which latter question is not before us.   It appearing that a great amount of detailed investigation would be necessary, covering a considerable period of time, the trial court referred the matter to a referee under our statutory provisions therefor.   The referee conducted 15 different hearings, commencing September 6, 1932, and ending June 10, 1933, after which he submitted his findings of fact, conclusions of law, and recommendations to the trial court.   After consideration, the trial court approved the findings of fact and conclusions of law and entered judgment in accordance with the referee's recommendations.   The defendant and certain interveners appeal. The record is very voluminous and the facts are many and complicated, but the following condensed narration is sufficient for the purposes of this appeal:

In 1921, Fred Spencer, owning real estate in Hobart, Okla., conveyed it by warranty deed to Bessie Schoenholtz, who conveyed it to Sidney H. Johnson in February of 1924. Johnson then orally agreed with defendant that defendant should manage the property, collect the rents, pay the taxes, insurance, and expense of upkeep, and remit the difference.   Defendant proceeded to do so, and continued the management of the property until shortly before this suit was filed.   During his management he did not know that Johnson subsequently, in December of 1924, conveyed the property back to Schoenholtz, and that Schoenholtz then, on April 25, 1929, conveyed it to plaintiff.   These two latter deeds were not recorded until 1931, and the various grantors and grantees were apparently not living in Hobart.   Defendant testified that he made some remittances to Johnson, but later ceased doing so because of the fact that taxes, insurance, repairs, improvements, and other expenses exceeded the rents, and for the further reason that Johnson did not reply to his letters, and could not be located.

Fred Spencer, original owner, also conveyed the property to plaintiff by deed dated January 15, 1929, but this transaction was held a nullity by the trial court, inasmuch as Fred Spencer on that date had nothing to convey, having already conveyed the same property to Schoenholtz in 1921, as above stated. But in the meantime, as stated above,

title had passed from Schoenholtz to Johnson and to Schoenholtz again, who conveyed it to plaintiff on April 25, 1929, and therefore plaintiff had title anyway, the only difference being about three months in the date of acquisition thereof.

Defendant lost his records of income and disbursements for prior to January 1, 1926, and testified that up to that date, however, the income was less than the expenses by $368.10. The referee found, as matter of fact, that said deficit of $368.10 did exist on January 1, 1926, and that on April 25, 1929 (date plaintiff acquired title, without knowledge of defendant), there was a deficit of $272.10, said deficit having gradually decreased from the 1926 figure, from month to month.

Pursuant to the referee's recommendations, the trial court found that plaintiff was not entitled to any of the income accruing prior to the date of her deed from Schoenholtz, April 25, 1929, but that she was entitled to the income from that date to the date of the trial, less the disbursements for the same period, defendant not having suffered detriment by plaintiff's failure to record. The receipts being $711.20, and the disbursements $400.16, judgment was rendered for $311.04 and interest, $250 compensation for referee and $117.10 for referee's reporter.

Plaintiff in error (defendant) first contends that there never was any basis for equity jurisdiction and that the plaintiff had an adequate remedy at law, in the form of an action for the use and occupancy of real estate, in which action she could have invoked the aid of sections 316, 317, 318, and 274, O. S. 1931. We do not agree. These sections relate to the establishing of genuineness of documents, obtaining inspection and copies thereof, and the usual functionings of subpoena duces tecum. Whatever may have appeared to be the prospect when the petition was filed, it is now apparent that an action at law, even with the aid of those sections, probably could have amounted to little more than a sightless, blundering, groping futility. The action involved a mutual account; but, though mutual, all of the knowledge with reference to it was possessed by the defendant. The plaintiff had no means of knowing what books, records, or documents to demand, and even though demanded, if defendant had failed to produce them the plaintiff would have been powerless from lack of knowledge to prepare the affidavit setting forth the contents of such documents, which under section 317 the judge may instruct the jury to accept as true. As further illustration of the need of equitable discovery, we observe the following: In May of 1931, the plaintiff demanded of the defendant an accounting. She was furnished a meager statement, from which was withheld the names of all tenants, or to whom disbursements were made. He later testified that "there was an accident that occurred to that record that destroyed part of it. We had it copied by the girl that was in the office, but she left off the names. She just put the amounts and dates in." Yet this same record was later somehow produced, and it not only revealed the names of the tenants, but it was in the defendant's own handwriting. And then, still later, the testimony of the very tenants whose names had been withheld proved that the record furnished by defendant was incorrect. One of the original grounds of equity's assumption of jurisdiction of actions in discovery on account was just such a situation as we have here, viz., a want of power to draw out the proofs from the consciences of the parties. Plunkett's Case. 1 Bligh N. S. 312, 4 Reprint, 888. And the reasons for the rule are as good today as they were in the beginning.

The defendant further contends that the cause was not a referable one and that the court therefore erred in referring it to a referee. There are several reasons why this contention is not tenable, but it is sufficient to observe only that when the order of reference was made the defendant's attorney was present and made no objection thereto. In Board of Commissioners of Grant County v. McKinley, 8 Okla. 128, 56 P. 1044, it was held that even if the cause was not such as might properly be referred, the defendant waived all objection thereto by failing to interpose said objection when the order was made. That ruling was later followed in Brewer v. Asher, 8 Okla. 231, 56 P. 714, and has not been overruled or modified by any subsequent decision. It has also been held in a number of cases, and is now the established rule of law, that the right to trial by jury is not adversely affected by reference of an equity proceeding to a referee.

But however all of that may be, we are unable to learn, either in the briefs or in the record, upon what theory the referee and trial court denied the defendant credit for the deficit of $272.10 existing on April 25, 1929, the date upon which plaintiff ac-

quired title. It should be remembered that on that date, for all the defendant knew, Johnson was still the owner of the property. It is true that defendant had not heard from Johnson for years and that, as stated in plaintiff's brief, the defendant knew that the property was subject to transfer, but nevertheless, so far as the record shows, it had not been transferred. Had plaintiff consulted defendant on April 25, 1929, and engaged his services as rental agent, the situation would have been different, but we must remember that the defendant had no knowledge of plaintiff's deed, or of any of the other transactions, until he was approached by plaintiff in the spring of 1931. The acquisition of title by plaintiff in April of 1929 started the beginning of plaintiff's right to the rents, but that right did not arise from plaintiff's contract with defendant, for there was none, but purely, as matter of law, because the defendant was holding and did hold, whatever funds he had, as trustee for the rightful owner, regardless of whether it was Johnson, Schoenholtz, or plaintiff. She can recover from defendant only because of his role as trustee, for she never had any contractual relation with him. As trustee, there was a deficit at the beginning of the period during which she was entitled to rents. Equity should not permit her to reap the benefit of his trusteeship, without at the same time accepting the burdens. His trusteeship was of a continuing nature, and though April 25, 1929, marked the date upon which her participation started, it was of no particular significance whatsoever to the defendant, for he did not know of it. The finding by the referee that the deficit did in fact exist is not against the clear weight of the evidence, and we are bound thereby.

It may be argued that since plaintiff was not entitled to any of the fund accruing before April 25, 1929, she should therefore not be charged with any deficit accruing before that time. But that is begging the question, and beside the point. The fact remains that on April 25, 1929, and thereafter until he was notified to the contrary in 1931, Johnson was still the owner so far as defendant knew, and defendant had the right to apply subsequent receipts and rentals in reduction of the amount owed him by Johnson until notified of the termination of Johnson's ownership or of his agency for Johnson. Suppose Johnson on April 25, 1929, had owed the bank $272.10 instead of owing it to defendant, and defendant had subsequently paid that amount to the bank out of the rentals, pursuant to Johnson's previous instructions, and pursuant to Johnson's apparent ownership, just as in the case before us he had at least the implied instruction of Johnson to repay himself for past expenditures out of future rentals.—could it be said that plaintiff could recover from defendant the amount he had paid the bank, when she had not notified him of any change in ownership? Obviously not. As between the two, her own neglect would be cast against her. We perceive no reason why he should not be permitted to pay Johnson's debt to himself, if he could pay Johnson's debt to the bank.

There is a bare suggestion in the briefs that defendant should not be permitted credit for this deficit because he pleaded the statute of limitations against plaintiff and cross-petitioners, but the contentions in that respect are altogether hazy. No argument or citation of authority on that point are before us, and we do not consider it. We hold that until notified to the contrary the receipts went right on reducing the indebtedness, in line with the general principles of agency, estoppel, and equity.

We now consider the contention of the cross-petitioners, who have also appealed. They are the heirs at law of Fred Spencer, original grantor. Their contention is that they are entitled to recover for rentals collected prior to April 25, 1929, the date plaintiff acquired title. It is based entirely on the assumption that the deed from Fred Spencer to Schoenholtz in 1921, and subsequent transfers, retained in Fred Spencer the equitable title and the right to proceeds. This assumption is not borne out by the record, and the finding of the referee and trial court are directly to the contrary. Nor does the fact that such was the theory of plaintiff's pleadings change the result, for the evidence did not support such theory, and they do not seek recovery against the party asserting that theory.

As to the cross-petitioners the judgment is affirmed. As to plaintiff the judgment is affirmed upon condition that plaintiff file a remittitur of $272.10 within five days after this opinion becomes final, and if the plaintiff fails to file said remittitur within that time, the judgment is reversed and the cause remanded for new trial.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and GIBSON, JJ., concur.