2016 OK CIV APP 47

The **MARGARET BLAIR TRUST, a Limited Partner of Blair Royalties, Ltd.; Margaret A. Blair, an individual and beneficiary of the Margaret Blair Trust; The Patricia Jane Bender Trust, a Limited Partner of Blair Royalties, Ltd.; Patricia Jane Bender, an individual and beneficiary of the Patricia Jane Bender Trust; The Mary Alice Blair Trust, a Limited Partner of Blair Royalties, Ltd.; and Mary Alice Blair, an individual and beneficiary of the Mary Alice Blair Trust, Plaintiffs/Appellants,**

v.

**Robert G. BLAIR, individually, as beneficiary of the Robert G. Blair Trust, as Trustee under Last Will and Testament of W.W. Blair, deceased, as Trustee of each Limited Partner of Blair Royalties, Ltd., as General Partner of Blair Royalties, Ltd. and as an officer, Director and owner of Comanche Exploration Co. LLC, and Comanche Resources Company; The Robert G. Blair Trust, a Limited Partner of Blair Royalties, Ltd.; Comanche Exploration Co. LLC; Comanche Resources Company; The John David Blair Trust, a Limited Partner of Blair Royalties, Ltd.; JOHN DAVID BLAIR, individually, as beneficiary of the John David Blair Trust, as Trustee under Last Will and Testament of W.W. Blair, deceased, as Trustee of each Lim-** ited Partner of Blair Royalties, Ltd. and as an officer, Employee and owner of Comanche Exploration Co. LLC, and Comanche Resources Company; and Blair Royalties, Ltd., Defendants/Appellees.

**Case No. 112,895 (Consolidated with 113,395)**

Court of Civil Appeals of Oklahoma, Division No. 2, **DIVISION II.**

Filed: 05/13/2016

Mandate Issued: 07/18/2016

Rehearing Denied June 15, 2016

Michael J. Blaschke, Michael J. Blaschke, P.C., Rachel Lawrence Mor, Dan M. Peters, Oklahoma City, Oklahoma, and Richard M. Healy, Richard M. Healy, P.C., Oklahoma City, Oklahoma, and Larry Derryberry, Derryberry & Naifeh, LLP, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Laura McConnell–Corbyn, Hartzog Conger Cason & Neville, Oklahoma City, Oklahoma, for Defendants/Appellees.

OPINION BY P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶ 1 The above captioned Plaintiffs appeal the decision of the district court in a trust/accounting case and the subsequent attorney fee award to Defendants. On review, we affirm these decisions.

## BACKGROUND

¶ 2 This case began in 2001, was presided over by three different judges during its history, and was finally tried in 2014. It arose from the 1977 will of W.W. Blair creating six testamentary trusts for his six children. The value of the assets contained in these trusts is disputed. Plaintiffs state that W.W. Blair divided "vast holdings" of oil and gas property among the trusts. Defendants state that the assets devolved to each trust were worth approximately $250,000. As of 1978, defendants Robert and John David Blair (Defendants) were the trustees of these trusts. In 1982, purportedly for tax purposes, the trusts were incorporated by agreement into a partnership, the Blair Royalties Limited Partnership (BRL). Robert Blair was general partner, and the six individual trusts were limited partners. W.W. Blair's estate was finally closed, and any remaining devised assets were transferred to BRL.

¶ 3 Plaintiffs suspected that the asset value of, and income from, the trusts and later the partnership were smaller than they properly should have been, and made various accounting demands on Defendants. Defendants provided some degree of accounting, but Plaintiffs disputed its sufficiency, arguing that they were entitled to, and had not received, a "full fiduciary accounting." Defendants argued that Plaintiffs had received the accounting they were entitled to, and that their only further remedy was the right to inspect the books and records of the partnership and derive their own figures from the books.

¶ 4 In 2001, Defendants sued Plaintiffs. Neither party designated the 2001 petition as part of the record, but Plaintiffs describe it as one "seeking an accounting." In 2004, the court gave notice of intent to dismiss for lack of prosecution. In 2006, Plaintiffs requested leave to amend to add several tort claims, including fraud in all its forms, unjust enrichment, breach of fiduciary duty, negligence, breach of contract, and usurpation of partnership opportunities. The court refused permission to amend, and Plaintiffs filed the claims as a separate suit, in Oklahoma County Case No. CJ–2006–10547. In 2007, the court ordered that case to be consolidated into the current case.

¶ 5 In July 2009, the court gave a second notice of intent to dismiss for lack of prosecution. Plaintiffs then filed another request to amend, which the court granted the following December. For the next two years, the parties intermittently skirmished over discovery. In January 2012, the court entered a scheduling order setting trial for August 2012, but later struck this date at the request of the parties. In June 2012, Plaintiffs requested and obtained leave to file another amended petition, which was filed in August 2012.

¶ 6 The same month, Plaintiffs filed a "motion to require Defendants to account, and to set evidentiary hearing to determine the manner of accounting to Plaintiffs and to the court." The court entered a new scheduling order setting trial for March 2013. The court denied the "motion to require Defendants to account" on the grounds that no accounting claim was currently before the court,[1] but

---

1. The original accounting claim had apparently been omitted from the amended petitions filed in the consolidated case.

purportedly gave Plaintiffs permission to "clean up their petition and add the accounting claim back against the original defendants." Plaintiffs did so in December 2012, re-instituting their claims for "an accounting" and requesting the appointment of a receiver or special master over the trusts. The petition at this time included all tort claims previously raised, as well as a claim of "statutory conversion" that apparently had been added sometime between 2006 and 2012. Plaintiffs then filed a second "motion for an accounting and request for evidentiary hearing to determine the manner and scope of accounting." The court evidently held a hearing on this motion in February 2013. The court subsequently entered a minute order which stated "plaintiffs' second motion for an accounting and request for evidentiary hearing to determine the manner and scope of accounting—granted in part, court to take remaining issues under advisement."

¶ 7 The March 13, 2013 trial date evidently was struck, and expert reports were finally exchanged in July 2013. In August 2013, Plaintiffs filed a third motion seeking an "order to require an accounting," stating that the court had not ruled on their prior request, but had taken it under advisement. In September 2013, Plaintiffs voluntarily dismissed the tort claims they had maintained since 2006. After the dismissal of the tort claims, the court responded that the issue of the accounting was set for an "evidentiary non-jury hearing," and outlined the following elements Plaintiffs would be required to show at the hearing: 1) proof that a fiduciary duty existed between the parties; 2) proof that Plaintiffs have a right to an accounting; 3) proof that an accounting has not been provided to Plaintiffs; and 4) presentation of facts and evidence indicating a balance is due to Plaintiffs. On March 24–25, 2014, the court, now headed by a third judge, held a hearing/trial on these issues. After the presentation of Plaintiffs' evidence, the court granted Defendants' motion for directed verdict ("demurrer"), as follows:

> The Court, having heard the evidence presented by the Plaintiffs, the cross-examination of Plaintiffs' witnesses, and having

considered the elements and burdens of proof set forth in the Order entered February 12, 2014, finds as follows:

1. Plaintiffs have met their burden of proof that a fiduciary duty existed or does exist between Plaintiffs and Defendants, Robert and David Blair.

2. Plaintiffs have met their burden of proof that they have a right to an accounting.

3. Plaintiffs have failed to meet their burden of proof that an accounting has not been provided to Plaintiffs. The Court finds that the trust instrument and the partnership Agreement at issue herein control the manner in which Defendants, Robert and David Blair, are required to account to Plaintiffs. The Court finds based upon the evidence presented herein that Defendants, Robert and David Blair, have accounted to Plaintiffs as required by the trust instrument and Partnership Agreement.

4. Plaintiffs have failed to meet their burden of proof in presenting facts and evidence which reasonably tend to prove that there is a balance due and owing to Plaintiffs.[2] Plaintiffs have placed great emphasis on the report of their expert. However, the Court finds that the report lacks several pieces of relevant information material to supporting the expert's analysis and ultimate conclusion. Based upon the testimony of Plaintiffs expert, even if he were afforded the documentation that he has requested, his final analysis could conclude that Plaintiffs are owed more, less, or nothing at all. This is too speculative and unreliable for this Court's purposes . . . .

¶ 8 Plaintiffs appealed the decision as Appeal No. 112,895. Defendants subsequently sought attorney fees and costs totaling $502,515. After a hearing which included expert testimony, the court awarded fees of $296,465 and costs of $16,209, pursuant to 60 O.S.2011 § 175.57D. Plaintiffs appealed this fee award as Appeal No. 113,395, which was later consolidated with Appeal No. 112,895.

¶ 9 While Plaintiffs urge some 35 combined allegations of error, the issues of conse-

---

**2.** This finding was not necessary, but for reasons set forth *infra*, constitutes harmless dicta.

quence on appeal are 1) whether the court correctly exercised its equitable jurisdiction in this "accounting" case; 2) whether the court was correct in finding that Defendants had satisfied their accounting duty to Plaintiffs; and 3) whether the trail court's order awarding attorney fees was in error.

## STANDARD OF REVIEW

¶ 10 During the multiple years of litigation, changes of counsel, consolidations, dismissals, and amendments in this case, Plaintiffs' basic legal theory appears to have become confused. This case began as one seeking to compel a duty to account; money damages; and the removal of a trustee for a breach of fiduciary duty that arose under a trust/partnership agreement. The case included tort claims for many years,[3] but finally resulted, without objection, in a bench trial solely on the issue of "equitable accounting." A lack of clarity in the proceedings and legal theories is not only evident in the extensive record, but also by the fact that the parties propose entirely different standards of review.

■ ¶ 11 This case ended with a "directed verdict" (demurrer) after Plaintiffs had presented their evidence in a bench trial of an equitable case. Plaintiffs propose that this matter must be reviewed by the standard stated in *Byford v. Town of Asher*, 1994 OK 46, 874 P.2d 45, that a directed verdict in a jury trial may be sustained only if there is a complete absence of evidence supporting a right to recover when all inferences are taken in favor of the plaintiff and conflicting evidence is disregarded.[4] Defendants, citing *Henderson v. Gifford*, 1957 OK 288, 318 P.2d 404, propose that a directed verdict in a *bench trial*, where a judge sits as the arbiter of both fact and law, is reviewed pursuant to the equitable "abuse of discretion" standard of review. *Henderson* states that, when a

directed verdict is requested after the presentation of the plaintiff's evidence in an equity case:

> Instead of disregarding all evidence supporting the demurrant's position, and considering only the evidence favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and overruling the demurrer, if from such consideration, there is any evidence reasonably tending to support plaintiff's cause of action, **the trial court, in an equity case, considers and weighs all of the evidence and determines in whose favor it preponderates.**

*Henderson* at ¶ 10, (emphasis added). *See also Hoffman v. City of Stillwater*, 1969 OK 190, 461 P.2d 944; *Arterburn v. Summers*, 1962 OK 137, 372 P.2d 614.

■ ¶ 12 We find that *Henderson* states the correct and rational decisional standard. In equitable actions where a judge is also the trier of fact, the standard of review is that applied to a judge as finder of fact. As *Arterburn* notes:

> When a trial is had before the court without a jury, the court must **eventually** weigh the testimony for the purpose of determining where the preponderance is, and **there is no reason why it should not do so at the earliest possible time,** when the rights of the plaintiff will not be cut off or impaired by its so doing, and when the plaintiff has introduced all his proof and rested, no right of his will be impaired, if the court then determines what has been proven.

*Arterburn* at ¶ 7, (emphasis added) (internal quotation marks omitted). Our standard of review is therefore *de novo* regarding the court's legal decisions, and for abuse of discretion regarding its factual conclusions.

> *Simmons Gun Specialties*, 687 P.2d 121, 130 (Okla.1984). Any conflicting evidence which is favorable to the movant (the defendant) is disregarded. *Id.* If there is any evidence which tends to show a right to recover, the demurrer is overruled and the case allowed to proceed. *Id.*, citing *Austin v. Wilkerson*, 519 P.2d 899 (Okla.1974); *Jack Healey Linen Serv. v. Travis*, 434 P.2d 924, 926 (Okla.1967).

---

**3.** These theories were voluntarily dismissed without prejudice a few months before trial.

**4.** *Byford* at ¶ 5, states:

In order for a trial court to correctly sustain a demurrer to the evidence all evidence and reasonable inferences therefrom which favor the party opposing the motion (the plaintiff) must be taken as true. *Blood v. R & R Engineering, Inc.*, 769 P.2d 144, 145 (Okla.1989); *Messler v.*

¶ 13 A question regarding entitlement to an award of attorney fees or costs presents a question of law for the appellate court to review *de novo*. *Finnell v. Seismic*, 2003 OK 35, ¶ 7, 67 P.3d 339. "What constitutes a reasonable attorney fee is a matter addressed to the sound discretion of the trial court to be decided based on various factors." *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.*, 2003 OK 72, ¶ 3, 77 P.3d 1042.

## ANALYSIS

### I. THE RELIEF REQUESTED AND THE TEST UTILIZED BY THE TRIAL COURT.

¶ 14 In order to determine if the court utilized the correct standards and analysis at trial, we need to examine the true legal nature of the proceedings. This analysis is necessary because it is not immediately clear from the record whether this was a suit to enforce an existing duty to account ("accounting at law"), or an "equitable accounting," or a situation in which the court took equitable jurisdiction over an otherwise legal accounting case. Investigation reveals some confusion because these actions are often mixed together under the concept of "accounting" without differentiating between them.[5]

¶ 15 The trial court utilized the standard stated in *Dobry v. Dobry*, 1958 OK 8, 324 P.2d 534, as the basis for trial. However, *Dobry* governs in situations where a court **must use its equitable powers to order an accounting because the plaintiff has no legal right to an accounting, but has no other adequate remedy for an injury.** This does not appear to be the case here. Whether this action is properly characterized as a

legal action or an equitable action, or as one seeking either an "accounting at law," an "equitable accounting," or "equitable jurisdiction over an accounting," is not immediately clear from the record.

### A. "Equitable Accounting"

¶ 16 Oklahoma appears to recognize at least three separate types of "accounting":

### 1. Accounting Pursuant to a Legal Duty (Accounting at Law)

¶ 17 The first of these actions is a court's enforcement of a *legal duty to account* created by contract and fiduciary status. This is not truly an equitable matter at all, but an enforcement of a legal right. If a contract states a right to an accounting, or a fiduciary duty creates such a right, its enforcement is initially a matter of tort or contract law, and not an equitable matter. *See Horton v. Hamilton*, 2015 OK 6, ¶¶ 21–23, 345 P.3d 357 (breach of fiduciary duty is essentially a claim of negligence in performing a duty, other than a heightened duty of care, breach of fiduciary duty is identical to negligence and gross negligence); *Mills v. Mills*, 1973 OK 74, ¶ 25, 512 P.2d 143 ("It is axiomatic that an accounting action is based upon a relationship created by contract or supplied by a fiduciary relation (and thus created by law) between the parties.").

¶ 18 A failure to account pursuant to a legal duty is pursued as a breach of duty, and is not an equitable matter at all. Although the phrase is not in common use in Oklahoma, other states sometimes refer to these actions as an "accounting at law."[6] An "accounting at law" appears to be the origi-

---

5. "[T]here are several different remedies called an 'accounting,' similar only in that all end in an order or judgment for the payment of money ... There has been a tendency among courts and writers to lump together these situations and to describe all of them as cases where an "accounting" is granted. The accounting has thus been surrounded by a certain amount of confusion...." Joel Eichengrun, *Remedying the Remedy of Accounting*, 60 Ind. L.J. 463, 463 (1985).

6. "This court has long recognized a clear distinction between the right to an accounting at law and the right to an accounting in equity." *Prehall*

*v. Weigel*, 232 Or.App. 148, 221 P.3d 157, 164 (Ore. 2009); "Not every litigant has a right to an equitable accounting, which 'is granted only in carefully prescribed and determined circumstances, such as when an accounting at law is inadequate.'" *Heath v. Sims*, 242 Ga.App. 691, 531 S.E.2d 115, 117 (Ga. Ct. App. 2000); *see also Koch v. First Union Corp.*, 2002 WL 372939 (Pa.Com.Pl. Phila. Cty. 2002) (a plaintiff may seek an accounting as part of his remedy at law, and may also assert a separate action for an accounting in equity, provided there is a sustainable underlying equity claim).

nal case that was brought before the district court here. Plaintiffs' original petition alleged breaches of fiduciary duty and failure to provide accounts as required by the trust/partnership agreements, and sought money damages. This matter did not begin as one seeking an "equitable" form of accounting.

### 2. Equitable Orders for Accounting

■ ¶ 19 The second action is the true equitable accounting, i.e., a situation where the plaintiff lacks a legal right to an accounting, but one is necessary to obtain an adequate remedy because the plaintiff has a cognizable legal right to recover, but *no other adequate remedy at law*. In a situation where the plaintiff lacks a legal right to an accounting, but an accounting is the only available means to an adequate remedy, the court may invoke its *equitable* powers to order an accounting. This was the situation raised in *Dobry*, 1958 OK 8, 324 P.2d 534, where stockholders brought an action against the directors of a family corporation to compel an accounting by the directors to the corporation. This was also the situation in *Robertson v. Maney*, 1946 OK 59, 196 Okla. 500,166 P.2d 106,[7] and *Stahl Petroleum Corp. v. Peppers Gasoline Co.*, 1947 OK 18, 198 Okla. 223,176 P.2d 988, wherein the Court found equitable accounting unavailable because the plaintiffs had available remedies at law.[8] The Oklahoma cases of *Field v. Spencer*, 1936 OK 21, ¶ 0, 176 Okla. 57, 54 P.2d 146

(syl. 1); *Arthur v. Arthur*, 1959 OK 148, ¶ 15, 354 P.2d 199, and *Adams v. Moriarty*, 2005 OK CIV APP 105, ¶ 7, 127 P.3d 621, also note the requirement that a plaintiff have no other adequate remedy before an accounting demand becomes equitable.

### 3. Equity Jurisdiction over an Otherwise Legal Accounting Matter

■ ¶ 20 The third action is that of a court taking *equity jurisdiction* over an *otherwise legal* action to enforce an accounting right and decide any subsequent damages because the complicated and drawn-out character of the accounting may make it difficult for a jury to decide if the accounting is sufficient, and decide if the accounting shows damages. This was the situation in *Mills v. Mills*, 1973 OK 74, ¶ 27, 512 P.2d 143, where an action on an accounting right created by a fiduciary or trust relationship was declared equitable because of "the need of discovery [and] the complicated character of the accounts."[9] *See also Vilbig Const. Co. v. Whitham*, 1948 OK 272, ¶ 5, 201 Okla. 86, 201 P.2d 922.

¶ 21 Other states have recognized similar circumstances under which a court can take equitable jurisdiction of an otherwise legal accounting case. *Basinger v. Provident Life & Acc. Ins. Co.*, 67 Mich.App. 1, 239 N.W.2d 735, 737–38 (1976), succinctly explains this doctrine:

> But it is evident that many cases arise in which the determination of what is justly due to a plaintiff necessarily involves long

---

7. "This court has repeatedly held that where the plaintiff has a plain, speedy and adequate remedy at law equity will not intervene in his behalf.... We are of the opinion, and hold, that the trial court's finding that no mutual accounts existed authorizing an accounting in equity should not be disturbed." *Robertson* at ¶ 7, (citation omitted).

8. This case was "at the most, merely a cause of action for breach of contract" and was "insufficient in law to entitle plaintiff to an accounting in equity." *Stahl* at ¶ 0, Syl. 4.

9. The basis of the "need for discovery" element is not immediately clear, as discovery had been available for many years in legal cases. The element appears to have been repeated from old cases that were decided before the general availability of discovery outside equity, and should not be a modern basis for equitable jurisdiction. For example, *see Field v. Spencer*, 1936 OK 21,

¶ 6, 176 Okla. 57, 54 P.2d 146, noting that equitable discovery was necessary because, "The plaintiff had no means of knowing what books, records, or documents to demand, and even though demanded, if defendant had failed to produce them the plaintiff would have been powerless from lack of knowledge to prepare the affidavit setting forth the contents of such documents...."

As noted in 1 Am.Jur.2d *Accounts and Accounting* 58 (2005)(footnotes omitted):
Discovery may now generally be had in actions at law, and while equity jurisdiction for discovery and accounting is not impaired by improved facilities for discovery at law, if the only grounds for equity taking jurisdiction is the need for a discovery, jurisdiction will be refused where the remedy at law is adequate and complete...."

and difficult inquiries-for instance, it may be necessary to review a series of transactions extending over many years. For such an investigation a jury is clearly incompetent.

### 4. Accounting as a Remedy

¶22 A possible fourth category of "equitable accounting" is accounting as a "remedy when a plaintiff has prevailed on a theory of recovery." Defendants cite *Hitch Enterprises, Inc. v. Cimarex Energy Co.*, 859 F.Supp.2d 1249, 1258 (W.D. Okla. 2012), and *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614 (10th Cir. 1992), for this principle, and state that this was a case seeking "equitable accounting as a remedy." However this "remedy of equitable accounting" may not be a separate category of accounting under Oklahoma law. *Howell* does not appear to comment on the issue at all, and *Hitch Enterprises* attributes this principle, without further comment, to the Oklahoma case of *Fleet v. Sanguine*, 1993 OK 76, 854 P.2d 892. The *Fleet* Court, as it happens, did not order a recovery using its equitable powers, and held that the plaintiff had *not prevailed* on any "equitable accounting" theory.[10] *Harrell v. Samson Res. Co.*, 1998 OK 69, ¶ 5, 980 P.2d 99, states that a plaintiff sought "the common law remedy of equitable accounting and cash balancing",[11] but goes on to decide the case based on the proper interpretation of cash balancing provisions in the parties' operating agreement, not "equitable accounting."

¶23 The exact nature of equitable accounting as a "remedy" remains unclear. It appears to be simply a restatement of the

"equitable accounting" principle of *Dobry*, which is applied when a plaintiff has shown need for an accounting because some money is owed and the plaintiff can obtain no adequate remedy at law. However, "accounting" appears to be the process by which the court or jury acquires evidence of the amount of money due. The *actual remedy* is simply a money judgment when this process is complete.

¶24 These "accounting" concepts are legally distinct, but are sometimes overlapped under the heading of "equitable accounting." Our next task is, therefore, to determine which of these forms of accounting was appropriate in this case.

### II. WAS THIS AN EQUITABLE CASE?

¶25 As we have noted in the prior paragraphs, equity jurisdiction over an accounting action arises under two circumstances: 1) plaintiffs have a demonstrated right to some recovery, but no adequate remedy at law without the court utilizing its equity power to order an accounting; or 2) a fiduciary or trust relationship existed, and the complicated character of the accounts and the need for drawn-out proceedings rendered the matter unsuitable for a jury determination. The trial court's language in its decision appears to track the test from ¶ 10 of *Dobry*,[12] a case in which plaintiffs claimed no adequate remedy at law without an accounting. However, the record does not show that the current case is analogous to *Dobry*.

¶26 *Dobry*, *Robertson*, and *Stahl Petroleum Corp.*, each arose in a situation where

---

10. Indeed, *Fleet* appears to hold the opposite. In *Fleet*, after a court-ordered audit of an operator's accounts, the court held that the operator was liable for the "back-in interests" of the mineral owners as a matter of law and "and set for *jury trial* the only remaining issue, that of recovery which would make the plaintiffs whole." The "equitable accounting" claim in *Fleet* was a "parallel ancillary proceeding" that the court found was rendered moot. *See* 1993 OK 76 at ¶¶ 14–16, 854 P.2d 892.

11. Cash balancing agreements address the problem of imbalances in production from a gas well or field. A typical agreement might require that the operator maintain an account showing over-

produced and underproduced amounts. Often, underproduced parties are given a specific right to make up in kind, with cash balancing on the basis of amounts actually received where it is not possible to balance in kind. 5 Summers Oil and Gas § 68:2 (3d ed.)

12. "As a general rule in such an action, where the right to an accounting is placed in issue, as in this case, the burden is upon the plaintiff to prove his right to the relief sought. He must place in evidence facts which reasonably tend to prove that there is a balance due. Failing this, there is no right to an accounting, and the bill is properly dismissed." 1958 OK 8 at ¶ 10, 324 P.2d 534.

there was no *legal right to an accounting* and the court was requested to use its equity powers to order one. In *Dobry*, a dissident minority stockholder alleged wrongful corporate expenditures, including 'vacation pay' and 'Christmas bonuses' to corporate managers, and excessive salaries paid to the directors. In *Robertson*, the plaintiff sought to recover money due on five separate contracts. In *Stahl Petroleum*, the plaintiff sued over contractual sales of casinghead gas. None of these situations gave rise to a legal duty to account, and hence the courts had to use equity powers to order an accounting. In both *Robertson* and *Stahl Petroleum*, the court denied an accounting because the plaintiff had other adequate remedies at law. This confirms that *no legal right to an accounting otherwise existed* in those cases, as the court could not deny an accounting if the plaintiffs had a legal right to one. In *Dobry*, the court denied an accounting because the plaintiff had not shown any expenditure that could be properly challenged, i.e., did not show a likelihood that money was owed. Again, if the plaintiffs in *Dobry* had a legal right to an accounting, they would not have to show a "challengeable expenditure" to receive one.

¶ 27 Nonetheless, Plaintiffs argue as part of their fee appeal that, on February 19, 2013, Judge Davis *granted their petition for a legal accounting and ordered same*, and the remaining procedure was therefore a separate action for an *equitable accounting*. However, we find no record of any ruling on that date finding a failure to account, ordering a legal accounting, or any subsequent ruling that Plaintiffs had no available remedy at law. Plaintiffs cite this crucial finding and "order to account" to a minute order of February 19, which states

> Judge Davis; plaintiffs' second motion for an accounting and request for evidentiary hearing to determine the manner and scope of accounting—granted in part, court to take remaining issues under advisement.

13. The trial court found a legal right to an accounting, and no party disputed this. Further, the Plaintiffs maintained tort claims for many years before voluntarily dismissing them. As in *Fleet*, the "equitable accounting" claim in this case

¶ 28 This minute order does not hold that a legal accounting is due, or order Defendants to make one. Plaintiffs also attached a transcript of part of the hearing of February 19. At no time in that transcript does the judge make any of the rulings alleged by Plaintiffs. We find no record that the legal accounting question was settled, or that the elements required for an equitable accounting were found by the court. We find it quite clear that Plaintiffs have both a legal right to an accounting, and an apparent adequate legal remedy.[13] This was not, therefore, a case of the court *using its equitable powers to order an accounting* where no right to one otherwise exists, or where no adequate remedy is otherwise available at law.

¶ 29 This case does, however, fit the category of *equitable jurisdiction over an otherwise legal case*. The record reveals a fiduciary or trust arrangement and the considerable difficulty of the involved accounts. The case involves long and difficult inquiries into a series of transactions extending over many years. Hence it satisfies the generally accepted test of *Mills*, 1973 OK 74, 512 P.2d 143, and *Vilbig Const.*, 1948 OK 272, 201 Okla. 86, 201 P.2d 922, for equitable jurisdiction over an accounting action. *Significantly, neither party objected to the court taking equitable jurisdiction, and neither party appeals the lack of a jury trial.*

### A. Did the Court Err In Using the *Dobry* Factors?

¶ 30 Although the court had a basis to take equitable jurisdiction over this otherwise legal accounting case, the parties were instructed to proceed utilizing the elements stated in *Dobry*. As we have previously noted, the *Dobry* test is not applicable in this case. The court instructed Plaintiffs that they would be required at trial to show: 1) a fiduciary relationship; 2) a right to an accounting; 3) a failure to provide the accounting; and 4) *evidence tending to prove a balance is due and owing*. The first two elements were uncontested, and the third is

appears to have been a "parallel ancillary proceeding" to the plaintiffs' action for tort damages and an accounting at law during most of this case.

appropriate to a demand for an accounting at law. The fourth is problematical.

¶ 31 The element of *evidence tending to prove a balance is due and owing* appears irrelevant to the inquiry. This element is not necessary to take equitable jurisdiction where there is a fiduciary relationship and a right to an accounting (*see Mills* and *Vilbig Const., supra*). Further, evidence that *some* balance is owed is useless in determining damages if an accounting is found adequate.[14] We find that the court's specification of this element was in error. It was not necessary in order to determine if Plaintiffs had received the accounting to which they were entitled by the trust/partnership agreements. This error was, however, harmless, as the likelihood of damages has no effect on the decision whether Plaintiffs had received a proper accounting.

¶ 32 We find, therefore, that this case was one in which the court took equitable jurisdiction of an action seeking to compel Defendants to account pursuant to a fiduciary duty and the parties' agreements, and found that the accounting duty of Defendants had been satisfied.

## III. DID PLAINTIFFS RECEIVE THE ACCOUNTING TO WHICH THEY WERE ENTITLED?

¶ 33 Both sides recognized a duty to account. The fundamental task before the district court was, therefore, to define the method by which Defendants were required to account to Plaintiffs. The parties differed strongly on this issue, Plaintiffs arguing that they were entitled to a "full fiduciary ac-

counting" while Defendants argued that their duty was limited to providing certain reports, and allowing Plaintiffs access to their books.

### A. Fiduciary Accounting

¶ 34 The term "fiduciary accounting" as used in the context of this case has no history in Oklahoma jurisprudence. Plaintiffs urged the court to adopt a four-point standard for "fiduciary accounting" promulgated by the "Committee on National Fiduciary Accounting Standards" of the American Bar Association. We find only two reported cases in the United States that have referenced these "National Fiduciary Accounting Standards." Neither case is published, and neither case apparently adopts these standards as a whole, although each makes passing reference to an element of the standards.[15] We find no history of these standards being widely accepted or applied, and no indication that the Oklahoma Supreme Court would adopt them in this case. We reject their application.

### B. What Should Have Been Accounted For?

¶ 35 Even the matter of *what* property Defendants were required to account for was disputed. Defendants argued that they were required to account only for property owned by or disbursed from the trusts. Plaintiffs argue that they were entitled to an accounting of interests beyond those the trusts actually owned, because Defendants have "usurped partnership opportunities." Plaintiffs maintained a tort claim for this usurpation for many years, but dismissed it before trial. Plaintiffs' expert, however,

---

**14.** The testimony of Plaintiffs' expert, Mr. Payne, was quite clear that he did not come prepared to offer testimony as to the amount of damages, i.e., *how much* Defendants owed Plaintiffs, but only testimony that there was *some balance due*. In comparison to this case, the element of showing that some balance is owed was clearly required in *Dobry*. To establish a right to an equitable accounting *where no legal right exists*, a plaintiff must show a legal harm with no adequate remedy at law. This is where the element of evidence tending to prove a balance is due and owing (i.e., evidence of a legal harm that must be remedied) becomes necessary.

**15.** *See In re JP Morgan Chase Bank*, 27 Misc.3d 1205(A), 910 N.Y.S.2d 405, 2010 WL 1340823,

*4 (2010) ("when such a value is not precisely determinable, the figure used should reflect a thoughtful decision by the fiduciary ..."); *Garetson v. Garetson*, A106277, 2005 WL 1249209, at *3 (Cal. Ct. App. 2005)("use of an appropriate carry value is the proper way to achieve consistent reporting"). In addition, a committee note to the Florida Probate Rules, states that "This rule substantially adopts the Uniform Fiduciary Accounting Principles and Model Formats adopted by the Committee on National Fiduciary Accounting Standards of the American Bar Association." *Amendments to the Florida Probate Rules*, 848 So.2d 1069, 1109 (Fla. 2003).

based much of his testimony on the theory that the accountable property included these "usurped opportunities." Defendants argue that the partnership agreement did not require them to offer such opportunities to Plaintiffs. The agreement states:

13.3 Independent Activities.

The General Partner and the Limited Partners may, notwithstanding the existence of this Agreement, engage in whatever activities they choose, **whether the same be competitive with the Partnership or otherwise, without having or incurring any obligation to offer any interest in such activities to the Partnership or any party hereto.** Neither this Agreement nor any activity undertaken pursuant hereto shall prevent the General Partner or the Limited Partners from engaging in such activities, or **require the General Partner or the Limited Partners to permit the Partnership or any Partner to participate in any such activities,** and, as a material part of the consideration for the execution hereof by the General Partner and Limited Partners, each Partner hereby waives, relinquishes and renounces any such right or claim of participation.

(Emphasis added). Plaintiffs brought the testimony of the original trust attorney that this clause was not intended to have the effect that the plain language states, and actually prevented Defendants from competing for oil and gas exploration in the same area where the Estate assets existed. However, we find the "independent activities" clause unambiguous, and hence no extrinsic testimony was required to interpret it. We find no duty on Defendants to offer opportunities to the partnership before pursuing them individually. We further find that the scope of the required accounting was limited by this clause.

C.   What Was the Form of Accounting to Which Plaintiffs Were Entitled?

¶ 36 The accounting duties/rights in this case arise from two sources: The testamentary trust of W.W. Blair, and the partnership document. The trust states the following:

6.01 No Accounting to Court.

The Trustee shall not be required to account *to any court* for the administration of the trusts, *but shall furnish periodic reports of the administration* to those beneficiaries entitled to receive distribution of income from the trust for which such report is furnished regardless of whether such income distributions are absolute or in the discretion of the Trustee. (Emphasis added).

Section 5.08 of the Blair Will, instructs the Trustee to "exercise such powers at all times in a fiduciary capacity primarily in the best interest of the beneficiaries hereunder." Defendants argue at times that section 6.01 negates any accounting duty ("The Trustee shall not be required to account to any court for the administration of the trusts.") However, the trust clearly requires "periodic reports of the administration to those beneficiaries entitled to receive distribution of income from the trust." Beyond this, however, the trust is silent regarding the content or timing of these "periodic reports of administration."

¶ 37 The partnership agreement states:

10.1 Books of Account.

The Partnership's books and records and this Agreement shall be maintained at the principal office of the Partnership and each Partner shall have access thereto at all reasonable times. The books and records shall be kept on a cash basis applied in a consistent manner by the Partnership and shall reflect all Partnership transactions and be appropriate and adequate for the Partnership's business.

10.2 Accounting and Reports.

A statement of cash receipts and disbursements shall be rendered monthly to each Partner. As soon as reasonably practicable after the end of each fiscal year, each Partner shall be furnished with a copy of a balance sheet of the Partnership as of the last day of such fiscal year and a statement of income or loss of the Partnership for such year, and a statement showing the amounts allocated to or allocated against such Partner pursuant to Section 8 of this Agreement during or in respect of such year, and any items of income, deduction, credit or loss allocated to him for purposes of the United States Internal

Revenue Code pursuant to Section 8 of this Agreement.

¶ 38 Section 10.2 does appear to state a defined duty in the form of the production of the following:

1. A monthly statement of cash receipts and disbursements; [16]

2. Yearly production of a copy of a balance sheet of the Partnership as of the last day of such fiscal year and a statement of income or loss of the Partnership for such year; and

3. A yearly statement showing the amounts allocated to or allocated against such Partner and any items of income, deduction, credit or loss allocated to him for purposes of the United States Internal Revenue Code.

¶ 39 Assessing the record, we find evidence that these reports, along with other data, were produced. The dispute does not truly appear to be whether these documents were produced, but whether Defendants had a duty to produce more than these documents. Plaintiffs have constantly maintained that they were entitled to a "fiduciary accounting" and that this requires considerably more data and analysis than the reports and returns contained. Plaintiffs rely primarily on *Smith v. Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 29, 50 P.3d 1132, which states:

> The trend across the nation in both legislation and judicial decision continues to favor increased openness and disclosure in situations like this one where the trust is irrevocable—beneficiaries are entitled not only to accounting information but also to relevant information concerning the bases upon which the trustee's discretionary judgments have been or will be made.

*Id.* (citing E. Halbach, "Uniform Acts, Restatements, & Trends in American Trust Law at Century's End," 88 Cal.L.Rev. 1877, 1913 (Dec. 2000)). However, we note that the primary question in *Smith* was not whether a trustee had properly fulfilled a reporting duty, but whether the reports were sufficient to put a beneficiary on notice of questionable transactions and poor performance of the trust investments *for statute of limitations purposes*.[17] There is no allegation in this appeal that Plaintiffs waited too long to bring their claims, or that they had no reason to believe anything was wrong as a result of the reports they were given.[18]

### D. Other Issues

¶ 40 Plaintiffs argue that the court's treatment of Robert Reece, W.W. Blair's estate counsel, as an undesignated expert witness was in error. The record is clear that Mr. Reece intended to offer opinion testimony as the customary interpretation of independent activity clauses in the oil industry. We find no error in the court's decision. Plaintiffs further argue that the trial court erred by "disregarding earlier rulings by Judge Gurich and Judge Davis." Any such rulings were interlocutory and subject to revision at any time.

¶ 41 Plaintiffs argue that they were unfairly surprised by the court interpreting the independent activities clause of the partnership agreement. Given that Plaintiffs presented an expert whose calculations were based on an interpretation of that clause, the issue cannot have been a surprise. Plaintiffs argue that the court incorrectly construed the partnership agreement against them, but

16. The provision was modified in 1993 to reduce the reporting requirement from monthly reports to quarterly reports.

17. "Relying on general statements in early case law, Verbon's guardian asserts that Verbon's claims—arising from a fiduciary relationship—can never be affected by the expiration of a limitations period because the trust has not been terminated and there has been no repudiation. Similar arguments were considered and rejected in *Mud Trans, Inc. v. Foster-Dickenson & Co., Inc.*, 1993 OK 94, 856 P.2d 282, which makes it clear that the statute of limitations begins to run on a trust beneficiary's claim when it learns it has suffered damage that might be the trustee's fault." *Smith* at ¶ 7, (footnotes omitted). "Verbon's cause of action against the trustee accrued when he had sufficient information to realize that the investment strategies utilized were not meeting his expectations." *Smith* at ¶ 14 (footnote omitted).

18. We think it the better practice that the makers of trust and partnership agreements be given a reasonable degree of freedom to tailor the duties of trustees, to the needs of a particular trust, and determine the nature of the reporting required in each particular case, rather than have the law impose uniform duties on all persons.

we find no record that the court resorted to this interpretive technique.

## IV. CONCLUSION TO THIS SECTION

¶ 42 This matter was conducted in an unusual procedural fashion, in that the substantive legal claims were dropped before trial, and the matter proceeded on an "accounting" theory that was likely not an appropriate vehicle for many of the tort/contract issues Plaintiffs attempted to raise. For example, an accounting claim is not a proper vehicle to determine, as a matter of first impression, if Defendants "usurped partnership opportunities." However, this issue was raised at trial when Plaintiffs' expert argued that Defendants were required not only to account for property owned by BRL, but also for property owned by Defendants "in the same area" pursuant to his interpretation of the partnership "independent activities" clause. An "accounting" claim cannot act as a proper substitute for legal proceedings in determining such issues. Indeed, the law limits the use of accounting as a "remedy" to situations in where there is no adequate legal remedy.

¶ 43 The issue for trial in this case was whether Plaintiffs had received the accounting to which they were entitled by law and contract. The trial judge found that they had received the accounting to which the agreements entitled them, and that the law imposed no greater duty. Pursuant to the standard of review, we find this decision to be within the court's discretion, and affirm it.

## V. FEES

¶ 44 Following an application in which Defendants sought fees and costs totaling $502,515 and a hearing that included expert testimony, the court awarded fees of $296,465 and costs of $16,209 pursuant to 60 O.S.2011 § 175.57D. Plaintiffs appealed this fee award as Appeal No. 113,395, which was later consolidated with Appeal No. 112,895. Plaintiffs raise eleven additional allegations of error regarding the fee award. These can be consolidated as follows:

1. The trial court erred when it awarded fees and costs under the Breach of Trust statute, 60 O.S.2011 § 175.57D, because Plaintiffs' petition for accounting never asserted breach of trust but was a common-law request that the fiduciary perform an accounting to the beneficiaries of the family trust.

2. The trial court erred in ignoring prevailing party status as required by Oklahoma law because the previous judge assigned to the case, split the accounting request into two parts, entered an order in favor of appellants, and ordered the appellee/fiduciaries to account under a partnership agreement.

3. The trial court erred in its application of § 175.57D because it ignored the requirement that any award under the breach of trust statute must be based on "justice and equity".

4. The trial court erred in ignoring the elements set out in *Atwood v. Atwood*, 2001 OK CIV APP 48, 25 P.3d 936, for equitable fees in this matter.

5. There was no showing via testimony or affidavit that the amount claimed was reasonable and related to the hearing for an accounting.

6. The trial court erred in making an unreasonable award because appellees sought costs and fees for a case which had been dismissed without prejudice and was not on file at the time of the accounting hearing and not a part of the accounting case.

7. The trial court erred in ignoring the dictates of *Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, because Defendants did not present evidence as required by *Burk* as to the reasonableness of fees and costs, but merely assigned a number to the fiduciaries' application without legal basis.

### A. Did Plaintiffs' Petition for Accounting "Involve a Trust"?

¶ 45 Title 60 O.S.2011 § 175.57(D) provides:

In a judicial proceeding **involving a trust,** the court may in its discretion, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by

another party or from the trust which is the subject of the controversy. (Emphasis added).

¶ 46 Plaintiffs argue that this statute limits fees to actions for *breach of trust*, and that no such action was before the court. Leaving aside for the moment the nature of the current action, we first note that the Oklahoma Supreme Court addressed the question of whether § 175.57 provided for fees only in *breach of trust* actions in *Corr v. Smith*, 2008 OK 12, ¶ 17, 178 P.3d 859 (abrogated on other grounds by *Russell v. Chase Inv. Servs. Corp.*, 2009 OK 22, ¶ 17, 212 P.3d 1178). In *Corr*, the Court discussed whether an action to have a trust amendment and will set aside was an "action for breach of trust" for fee purposes, and stated:

> The distinction between the terms "judicial proceeding involving a trust" and "breach of trust" is readily apparent. We will not assume that the legislators were unaware that subsection D used the broader term "judicial proceeding involving a trust." Indeed, we must presume that "the legislature has expressed its intent in a statute and that it intended what it so expressed." *TXO [v. Oklahoma Corp. Com'n]*, 1992 OK 39, ¶ 7, 829 P.2d [964] at 969. Using this fundamental rule of statutory analysis, we conclude that section 174.57(D) [sic] unambiguously authorized the trial court to grant the [plaintiff's] request for an award of attorney fees in this "judicial proceeding involving a trust."

*Corr* at ¶ 23. We must therefore determine if this was a "judicial proceeding involving a trust" rather than a "breach of trust" action.

## B. Does the Oklahoma Trust Act Apply?

¶ 47 Plaintiffs argue that their first filing in 2001 sought only a "common law accounting" and thus did not implicate any trust relationship.[19] Plaintiffs further argue that, because their accounting claim was not based on the Oklahoma Trust Act, where § 175.57

---

19. No party designated this original petition, and we find no copy of it in the record.

20. "Although attorney fees are available in breach of trust cases, 60 O.S.Supp.1999

is found, but was a "common law claim," then § 175.57 cannot authorize fees.

¶ 48 Title 60 O.S.2011 § 175.53 is clear that the Act applies "in the construction of, and operation under,

> A. All agreements containing trust provisions entered into subsequent to the effective date hereof [1941];
>
> B. All wills made by testators who shall die subsequent to the effective date hereof [1941]...."

Hence, the Act and its provisions apply to judicial proceedings involving the trust whether Plaintiffs sought relief under it or not. The question, therefore, is whether Plaintiffs' action for an accounting constituted a "judicial proceeding involving a trust."

¶ 49 Case law interpreting § 175.57 and defining a "judicial proceeding involving a trust" is limited. *Isle v. Brady*, 2012 OK CIV APP 99, ¶ 34, 288 P.3d 259, approves an attorney fee for an attorney's work in *accounting for trust property* over the objection of a removed trustee, who argued, "Petitioners should pay for the accounting as part of their underlying claim against [Trustee] for breach of fiduciary duty on which they have the burden of proof." *May v. Oklahoma Bank & Trust Co.*, 2011 OK 52, ¶ 18, 261 P.3d 1138 (as corrected on denial of reh'g) (Sept. 30, 2011), held that a bank acting as trustee was not entitled to a special fee for correcting its own error in administration. *Corr*, 2008 OK 12 at ¶¶ 19–20, 178 P.3d 859, notes that, pursuant to the Act, a "breach of trust" is defined as a "violation by a trustee of a duty the trustee owes a beneficiary," and can support a fee claim. *Pezold, Richey, Caruso & Barker v. Cherokee Nation Indus., Inc.*, 2002 OK CIV APP 43, n. 1, 52 P.3d 430 (Hansen, J., dissenting), indicates that a case must include allegations of damage to the trust *res* to support fees pursuant to § 175.57.[20] From the limited authority available, we conclude that this matter did support fees pursuant to 60 O.S.2011 § 175.57(D).

---

§ 175.57(D), this case involves no allegations Law Firm caused injury to the trust res; therefore, that section is not applicable here." *Pezold* at n. 1 (Hansen, J., dissenting).

## C. The Effect of Plaintiffs' Dismissals

¶ 50 Plaintiffs also argue that, even if the case did have elements of a trust/fiduciary duty action, their tort claims were dismissed without prejudice in September 2013, some six months before trial, and the trial court was required to segregate any time that Defendants expended on the "tort case" from time they expended on the "accounting case." Defendants argue that the defense of the accounting claim required the same actions and research as defense of the tort claims, and hence no apportionment is required. The "accounting case" and the "tort case" comprise a single cause of action based on the same facts. Further, the tort case was a "judicial proceeding involving a trust" and would support a fee award if it was tried. The question, therefore, was whether the dismissal of the tort claims before trial rendered the time expended in defending against them non-compensable.

¶ 51 One principle is clear in Oklahoma law. If there are no counterclaims, voluntary dismissal of *all claims* before the defendant has obtained "affirmative relief" ends the case, and the court has no jurisdiction to award fees. *See Fentem v. Knox*, 2013 OK CIV APP 50, ¶ 8, 305 P.3d 1043. Less clear is the question of how this doctrine operates when some, but not all claims are dismissed before trial. *Austin Place, L.L.C. v. Marts*, 2015 OK CIV APP 2, ¶ 17, 341 P.3d 693, notes that when no judgment is entered and no affirmative relief granted by the district court in favor of a party on a claim, the party is not a prevailing party *as to that claim.* We find, therefore, that that time spent defending the dismissed claims would traditionally be non-compensable under a prevailing party statute, unless 1) defendants received an affirmative judgment on these claims before dismissal, or 2) time spent defending these claims was inextricably linked to the defense of the accounting claims. *See Bank of Am., N.A. v. Unknown Successors of Lewis*, 2014 OK CIV APP 78, ¶¶ 47–48, 336 P.3d 1034. In the final analysis of the fee award, we must assess how the trial court handled these issues.

## D. Did the Court "Split the Accounting Request Into Two Parts and Enter an Order In Favor of Appellants and Order[ ] the Appellee/Fiduciaries to Account under a Partnership Agreement"?

¶ 52 Plaintiffs also argue that they were a prevailing party in this case because the court held that they were legally entitled to an accounting, and the court ordered Defendants to account. As noted above, Plaintiffs' argument is based on a minute order that appears only in the docket sheet, and two pages of a hearing transcript in which the court renders no judgment. Having read the entire transcript of the hearing at which Plaintiffs claim the court decided in their favor and ordered an accounting, the ruling of the court was:

> Ok. Well I'm going to order that the documents that are required to be exchanged under the partnership agreement to the extent that they have not already been produced, exchanged. I mean, if you got them back in 1987 and you still have them, I don't know why you would want them again. That all needs to be exchanged, produced, however you want to coordinate it.

Hearing of February 19, 2013, pp. 60–61.

¶ 53 We do not view this as an "order for an accounting." Plaintiffs further fail to explain why, if the court ordered Defendants to account in February 2013 as alleged, Plaintiffs filed a motion in July 2013 seeking an order for an accounting, and alleging that the court had *not previously ruled on their request.* We reject the argument that Plaintiffs were prevailing parties.

## E. *Burk*

¶ 54 Plaintiffs argue that the court failed to hear evidence pursuant to *State ex rel Burk v. City of Oklahoma*, 1979 OK 115, 598 P.2d 659, as to the reasonableness of fees and costs, but "merely assigned a number to the fiduciaries' application without legal basis." The trial court stated in its fee order that it had "conducted an independent assessment of the reasonableness of costs and fees that should be assessed in this matter, having due regard for all of the factors set forth in [*Burk*]." According to the transcript

of the fee hearing of February 3, 2015, Defendants introduced testimony regarding all aspects of the fees from an expert, and Plaintiffs extensively cross examined that expert. These examinations ran for over 70 pages of transcript. We find no validity in the claim that the court failed to hear evidence as to the reasonableness of fees and costs.

### F. Equity

¶ 55 Plaintiffs also argue that the court's fee decision was against equity, relying largely on the factors noted in *Atwood v. Atwood*, 2001 OK CIV APP 48, ¶ 47, 25 P.3d 936. *Atwood* states that the statutory phrase "as justice and equity may require" contained in § 175.57(D) serves two functions, first as a criterion for entitlement, and second, as a measure of the size of the award. *Id.* ¶ 45.

> The phrase connotes fairness and invites flexibility in order to arrive at what is fair on a case by case basis. Hence, general criteria drawn from other types of cases provide nonexclusive guides. These include (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

*Id.* ¶ 47.

¶ 56 Plaintiffs argue that their claims were reasonable; they did not act vexatiously or wantonly; and they do not have the relative ability to bear the financial burden. They also argue that they were a prevailing party, but we have rejected this argument. These arguments must be balanced against the facts that, for some eight years, Plaintiffs maintained numerous tort claims seeking many millions of dollars in damages, but dismissed these claims shortly before trial, and that Plaintiffs' accounting claims appear to have become something of a "moving target" over the years, culminating in an attempt to impose the ABA's "fiduciary accounting" standards that are not recognized in Oklahoma, or adopted in any state. The district court is granted substantial discretion in this matter, and we find no abuse of that discretion.

### G. The Amount of the Fee

¶ 57 The most vexing question is how we should assess the fee the court awarded. We noted in Section C above that, in a normal prevailing party fee inquiry, it may be necessary to segregate fees incurred in defending the dismissed tort claims from fees incurred in defending the accounting claims pursuant to *Green Bay Packaging v. Preferred Packaging, Inc.*, 1996 OK 121, 932 P.2d 1091. The fee award in this case is, however, equitable, and *Atwood* notes that the applicable criteria allow the court to consider equity as a measure of the size of the award. Hence, the court could consider the fact that Plaintiffs brought and dismissed tort claims in the amount of the fee awards. Defendants requested $502,515 in fees and costs and the court awarded fees of $296,465 and costs of $16,209, a reduction of 38% in the fees sought. The court clearly reduced the fee using its equitable judgment. Plaintiffs do not show that the court abused its discretion in doing so.

### CONCLUSION

¶ 58 This is a complex case to review, in part because Plaintiffs did not seek an early decision regarding some singular and decisive issues, such as the legal interpretation of the "independent activities" clause of the partnership agreement. Issues more properly suited to a tort/contract inquiry were grafted onto a somewhat ambiguous "accounting" claim, which was the only matter tried. The proceedings further raise several intricate questions that do not appear to have a clear "black letter" answer in the law. Where it was necessary, we have decided these questions in accordance with existing precedent. We find, pursuant to that precedent, no abuse of discretion in the court's decision in the trial, or in its subsequent fee award.

¶ 59 **AFFIRMED.**

RAPP, J., and BARNES, J., concur.